UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

REPORT AND RECOMMENDATION

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

John O. Murrin III, and DeVonna
K. Murrin, husband and wife,

Plaintiffs,

vs.

Jason E. Fischer, individually,
Fischer, Fischer and Jeffery, LLC,
Fischer, Fischer and Jeffery, LLP,
Law Offices of Fischer & Fischer,
Jennifer K. Fischer, Layne Brent
Jeffery, Agassiz Ridge, LLC, Woods
by Bluestem, LLC, Bluestem
Development, LLC, Investors Real
Estate Services, LLC aka INRE
Title, and Real Source Title
(Realsourcetitle.com), A1 Settlement,
Avidigm Capital Group, Inc., Steven
J. Mattson, Danisa Leflore, Monet
Management, LTD, Charles Senn,
Country Square Apartments, LLC,
Greg Kaiser, Hay River Capital LLC,

U.S. Federal Credit Union, and Does
I-X, Inclusive,

                              Defendants.        Civ. No. 07-1295 (PJS/RLE)

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motion of Jason E. Fischer ("Fischer"), Fischer,

Fischer & Jeffery, LLC, Fischer, Fischer & Jeffery, LLP, Law Offices of Fischer &

Fischer, Jennifer K. Fischer ("J. Fischer"), Agassiz Ridge, LLC ("Agassiz Ridge"),

Woods by Bluestem, LLC, and Bluestem Development, LLC (collectively,

"Bluestem"), Investors Real Estate Services, LLC, a/k/a INRE Title ("INRE Title"),

and A-1 Settlement, n/k/a Real Source Title ("Real Source")(collectively, the "Fischer

Defendants") to Dismiss; the Motion of Stephanie Leflore,[1] and Monet Management,

---

[1]There has been abundant confusion as to the true identity of the Defendant who
is named in the caption as "Danisa Leflore."  An Affidavit was submitted by her
attorney requesting that she be correctly named as "Stephanie Leflore."  See, Affidavit
of Neil P. Thompson, Docket No. 119, Exhibit A.  However, in an earlier Affidavit,
see Docket No. 71, this Defendant personally avers that her name is "Stephani
LeFlore."  For consistency sake, we employ "Staphanie Leflore" to identify this
                                                        (continued...)

- 2 -

LTD (collectively, "Leflore"), to Dismiss; the Motion of Greg Kaiser, and Hay River Capital, LLC (collectively, "Kaiser"), for Judgment on the Pleadings; and the Motion of Layne Brent Jeffery ("Jeffery") to Dismiss.

A Hearing on the Motions was conducted on May 22, 2007. The Plaintiffs John O. Murrin III ("Murrin"), and DeVonna K. Murrin (collectively, the "Murrins"), appeared by Christopher A. LaNave, Esq.; the Fischer Defendants appeared by Valerie Sims, Esq.; Leflore appeared by John J. Curi, and Neil P. Thompson, Esqs.; Kaiser appeared by R. Daniel Rasmus, Esq.; Jeffery appeared by Susan E. Gustad, Esq.; and Charles Senn and Country Square Apartments, LLC ("Senn") appeared by D. Charles Macdonald, Esq.

Subsequent to the initial Hearing, Senn filed a Motion to Dismiss, and the Murrins filed a Motion to Amend the First Amended Complaint. A Hearing on those Motions was held on October 4, 2007, and at that Hearing, the Murrins appeared by John O. Murrin III; the Fischer Defendants appeared by Valerie Sims, Esq.; Jeffery

---

[1](...continued)
Defendant, even though we are confident that the spelling of both the first and the last name is incorrect.

- 3 -

appeared by Susan E. Gustad, Esq.; and Senn appeared by D. Charles Macdonald, Esq.

The Fischer Defendants filed a Motion for Sanctions Pursuant to Title 28 U.S.C. §1927, and a Hearing on that Motion was conducted on October 25, 2007. At that Hearing, the Murrins appeared by Christopher A. LaNave, Esq., and the Fischer Defendants appeared by Valerie Sims, Esq.

Finally, the Murrins filed a Motion for Attachment and Injunction as to Senn, and Senn filed a Motion for Sanctions Pursuant to Title 28 U.S.C. §1927. A Hearing on those Motions was held on December 20, 2007, and at that Hearing, the Murrins appeared by Christopher A. LaNave, Esq.; the Fischer Defendants appeared by Valerie Sims, Esq.; and Senn appeared by D. Charles MacDonald, Esq.

For reasons which follow, we recommend that the Motion to Dismiss of the Fischer Defendants be granted, in part; that the Motion to Dismiss of Leflore be granted; that the Motion for Judgment on the Pleadings of Kaiser be granted; that the Motion to Dismiss of Jeffery be granted; that the Murrins' Motion to Amend

Complaint be granted, in part; and that the Motion of the Fischer Defendants for

Sanctions be denied.[2]

## II.  Factual and Procedural Background

This action arises out of the alleged loss of a $600,000.00 investment that the

Murrins contributed to Avidigm in 2004.   At the time of the Murrins' investment,

Avidigm was allegedly in the business of purchasing foreclosed properties, and then

reselling the properties at a profit, if the homeowners did not redeem the properties.

The Murrins allege that, on August 20, 2004, they attended a meeting with

several other parties, including Mattson , who was the CEO of Avidigm, and Fischer,

who was an attorney representing Avidigm.   See, Amended Complaint, Docket No.

1-1, at ¶¶28-29.  Following that meeting -- on August 31, 2004 -- the Murrins allegedly

entered into a formal agreement with Avidigm, and received a Security Agreement, a

Promissory Note, and the personal guaranty of Mattson.  Id. at ¶45.  The Murrins

ultimately agreed that Avidigm could secure their investment by granting them a

---

[2]Pursuant to a Stipulation between the Murrins and Senn, on January 7, 2008, the District Court issued an Order of Dismissal with prejudice as to Senn.  See, Docket No. 298.  As a consequence, we recommend that Senn's Motion to Dismiss, and Motion for Sanctions, and the Murrins' Motion for an Attachment against Senn, be denied as moot, and we do not address those Motions further.

mortgage on a property that was located in North Dakota.  Id. at ¶¶48-51.  The Murrins wired the $600,000.00 to Avidigm on September 1, 2004.  Id. at ¶46. Avidigm made payments on the Promissory Note to the Murrins until January 20, 2006, and then defaulted on the Note.  Id. at ¶531.

On January 23, 2007, the Murrins filed an Amended Complaint, in a Minnesota District Court, against Fischer, several entities that the Murrins allege are the alter egos of Fischer, several entities that they believe were associated with Fischer, and two (2) of Fischer's law partners.  See, Docket No. 1-1.  Specifically, the Murrins allege that J. Fischer, and Jeffery, were partners of Fischer at his law firm, and therefore, are vicariously liable for Fischer's alleged wrongdoing.  Id. at ¶¶5-7.  Bluestem, Agassiz Ridge, INRE Title, and Real Source, are assertedly entities, that were allegedly controlled by Fischer during the relevant period.  Id. at ¶¶12-13.  The Murrins claim that Leflore, and Kaiser, participated in a fraudulent scheme to artificially inflate the value of the North Dakota property, and thereby deprive the Murrins of their security interest, id. at ¶77, 108, 121, 250, and additionally, that Fischer acted as Kaiser's agent in a scheme to defraud the Murrins.  Id. at ¶262.[3]

---

[3]Pursuant to a Stipulation, the Defendant U.S. Federal Credit Union has been
(continued...)

Several Motions to Dismiss have been filed by various groupings of the named Defendants.   On March 3, 2007, the Fischer Defendants filed a Motion to Dismiss, see, <u>Docket No. 7</u>, and they amended that Motion on April 17, 2007.  See, <u>Docket No. 82</u>.   In their Motions, the Fischer Defendants argue that the Murrins have failed to plead an attorney-client relationship between Fischer, and themselves, and that the Murrins' claim for damages is not ripe, as they remain secured on the North Dakota property, which is currently in foreclosure.

The second Motion to Dismiss was filed by Leflore, see, <u>Docket No. 48</u>, who argues that all of the claims against her should be dismissed, as the Murrins have failed, in their pleadings, to allege that Leflore was involved in inducing the Murrins to allow the North Dakota property to be used as a security, or was invested in the North Dakota property at any time prior to the Murrins' own investment.

Kaiser has filed an Answer in this matter, see, <u>Docket No. 51</u>, and brings a Motion for Judgment on the Pleadings.  See, <u>Docket No. 58</u>.   Kaiser adopts the argument of the Fischer Defendants, and argues that the Murrins have suffered no damages, and further suggests that the Murrins have failed to satisfy the requirement

---

[3](...continued)
dismissed, with prejudice, from this case.  See, <u>Docket No. 76</u>.

of Rule 8(a), Federal Rules of Civil Procedure, that a Complaint be a "short and plain statement."

The fourth Motion to Dismiss is brought by Jeffery, see, <u>Docket No. 65</u>, who also joins in the argument of the Fischer Defendants, that the Murrins have failed to allege an attorney-client relationship, between the Murrins and Fischer, and argues that all of the claims against him should be dismissed as they solely rely on a theory of vicarious liability, based upon Jeffery's association with Fischer.

On September 20, 2007, the Murrins moved for leave to amend their Amended Complaint, see, <u>Docket No. 172</u>, and on October 11, 2007, the Fischer Defendants filed a Motion seeking Sanctions pursuant to Title 28 U.S.C. §1927.  See, <u>Docket No. 224</u>.

### III.  <u>Discussion</u>

As previously noted, the Fischer Defendants, Leflore, and Jeffery, have filed Motions to Dismiss, while Kaiser has filed a Motion for Judgment on the Pleadings. In addition, the Murrins have moved to amend their Complaint, and the Fischer Defendants have moved the Court to impose sanctions upon the Murrins.  We address each Motion in turn.

A.    <u>The Motions to Dismiss, or for Judgment on the Pleadings, of the Fischer Defendants, Leflore, Kaiser, and Jeffery</u>.

     1.    <u>Standard of Review</u>. "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." <u>Riley v. St. Louis County</u>, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.23d 554, 556 (8th Cir. 1998); see also, <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 742 (8th Cir. 2004). In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party. See, <u>Maki v. Allete, Inc.</u>, supra at 742. "However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." <u>Levy v. Ohl</u>, 477 F.3d 988, 991 (8th Cir. 2007),quoting <u>DuBois v. Ford Motor Credit Co.</u>, 276 F.3d 1019, 1022 (8th Cir. 2002).

     "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." <u>Id.</u>, quoting <u>Conley v. Gibson</u>, 355 U.S. 41,

45-46 (1957); <u>Young v. City of St. Charles</u>, 244 F.3d 623, 627 (8th Cir. 2001), citing

<u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998); see also, <u>Koehler</u>

<u>v. Brody</u>, 483 F.3d 590, 596 (8th Cir. 2007); <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v.</u>

<u>Independent School Dist. No. 361</u>, 149 F. Supp. 2d 863, 866-67 (D. Minn. 2001).

Nevertheless, "[d]ismissal under Rule 12(b)(6) serves to eliminate actions which

are fatally flawed in their legal premises and designed to fail, thereby sparing litigants

the burden of unnecessary pretrial and trial activity." <u>Stringer v. St. James R-1 School</u>

<u>District</u>, 446 F.3d 799, 802 (8th Cir. 2006), quoting <u>Young v. City of St. Charles</u>, supra

at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989).  Moreover, "[t]o avoid

dismissal, a complaint must allege facts sufficient to state a claim as a matter of law

and not merely legal conclusions." <u>Young v. City of St. Charles</u>, supra at 627, citing

<u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir. 1998).

In addition, Rule 12(c), Federal Rules of Civil Procedure, allows parties to

move for a Judgment on the Pleadings, "[a]fter the pleadings are closed, but within

such time as not to delay the trial."  The standard upon which Rule 12(c) Motions are

decided is akin to that of a Motion to Dismiss under Rule 12(b)(6), Federal Rules of

Civil Procedure.  See, <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990)

("[W]e review this 12(c) motion under the standard that governs 12(b)(6) motions."),

citing <u>St. Paul Ramsey County Med. Ctr. V. Pennington County</u>, 857 F.2d 1185, 1187 (8th Cir. 1988); see also, <u>Flora v. Firepond, Inc.</u>, 260 F. Supp. 2d 780, 784 (D. Minn. 2003), aff'd, 383 F.3d 745 (8th Cir. 2004).  As a result, a "[j]udgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."  <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 803 (8th Cir. 2004), citing <u>United States v. Any & All Radio Station Transmission Equip.</u>, 207 F.3d 458, 462 (8th Cir. 2000).  A disputed fact is "material," if it must inevitably be resolved, and that resolution will determine the outcome of the case.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 248; <u>Jenkins v. Southern Farm Bureau Casualty</u>, 307 F.3d 741, 744 (8th Cir. 2002)("A fact is material if its determination in favor of the non-moving party could affect the result in the case."); <u>Herring v. Canada Life Assurance</u>, 207 F.3d 1026 (8th Cir. 2000).

When making such determinations, "[w]e accept as true, all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party."  <u>Syverson v. Firepond, Inc.</u>, 383 F.3d 745, 749 (8th Cir. 2004), quoting <u>United States v. Any & All Radio Station Transmission Equip.</u>, supra at 462. However, we need not accept as true, wholly conclusory allegations, or unwarranted factual inferences.  See, <u>Hanten v. School Dist. of Riverview Gardens</u>, 183 F.3d 799,

805 (8th Cir. 1999); <u>Springdale Educ. Ass'n v. Springdale School Dist.</u>, supra at 651.

Moreover, in treating the factual allegations of a Complaint as true, the Court "do[es]

not, however, blindly accept the legal conclusions drawn by the pleader from the

facts." <u>Westcott v. City of Omaha</u>, supra at 1488, citing <u>Morgan v. Church's Fried

Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987).

A Motion to Dismiss, or for Judgment on the Pleadings, can be converted to

a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are

presented to and not excluded by the court." <u>Rule 12(b) and (c), Federal Rules of

Civil Procedure</u>. However, a Court may consider some information, which is not

contained within the Complaint -- such as materials that are part of the public record,

and materials that are necessarily embraced by the pleadings -- without transforming

the Motion into one for Summary Judgment. See, <u>Porous Media Corp. v. Pall Corp.</u>,

186 F.3d 1077, 1079 (8th Cir. 1999); see also, <u>Enervations, Inc. v. Minnesota Mining

and Manufacturing Co.</u>, 380 F.3d 1066, 1069 (8th Cir. 2004); <u>Stahl v. United States

Department of Agriculture</u>, 327 F.3d 697, 700 (8th Cir. 2003).

Materials necessarily embraced by the pleadings include "documents whose

contents are alleged in the complaint, and whose authenticity nobody questions, but

which are not physically attached to the pleading." <u>Fraenkel v. Messerli & Kramer,</u>

P.A., 2004 WL 1765309 at *2 (D. Minn., July 29, 2004), quoting Kushner v. Beverly

Enters., 317 F.3d 820, 831 (8th Cir. 2003), see also, Jenisio v. Ozark Airlines, Inc.,

Ret. Plans, 187 F.3d 970, 972 n.3 (8th Cir. 1999)("A district court may consider

documents on a motion to dismiss where * * * the plaintiff's claims are based solely

on the interpretation of the documents and the parties do not dispute the actual

contents of the documents."). Since our decision rests entirely on the pleadings,

materials within the public record, and materials that are necessarily embraced by the

pleadings, we analyze the Defendants' Motions under the framework of Rule 12(b)(6)

and 12(c), rather than under the regimen of Rule 56.

   2. Legal Analysis.

    a. The Fischer Defendants' Motion to Dismiss.  In their Motion

to Dismiss, the Fischer Defendants argue that the Murrins' Complaint should be

dismissed, since the Murrins lack standing to bring a malpractice claim that is based

upon the conduct of Fischer and his law firm, and they have failed to state a claim as

to Fischer, for fraud; for violations of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"); for interference with security/prospective business

advantage; for consumer fraud; and for theft of property under Minnesota Statutes

Sections 604.12 and 609.52.  Moreover, the Fischer Defendants argue that the Murrins

have failed to state any claim against J. Fischer, Bluestem, Agassiz Ridge, INRE Title, and Real Source, and that each of those parties should be dismissed.

        1)     <u>The Malpractice Claims as to Fischer</u>.  The Murrins allege several claims for malpractice against Fischer.   Specifically, the malpractice claims, which are included in the Complaint, include:  Count I -- Negligence of Fischer --Attorney/Client; Count III: Fischer --Volunteer Third Party Beneficiary, Public Policy; Count IV -- Breach of Contract; and Count IX -- Promissory Estoppel. [4]

An action for legal malpractice requires that a plaintiff establish four (4) elements: (1) that an attorney-client relationship existed; (2) that the attorney committed acts of either negligence or breach of contract; (3) that the attorney's acts were the proximate cause of the plaintiff's damages; and (4) that but-for the attorney's acts, the plaintiff would have obtained a more favorable result in the underlying transaction than the result that took place.  See, <u>Jerry's Enterprises, Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.</u>, 711 N.W.2d 811, 816 (Minn. 2006), quoting <u>Blue Water Corp. v. O'Toole</u>, 336 N.W.2d 279, 281 (Minn. 1983).  The plaintiff must establish each of

---

[4]The Murrins, apparently in error, label this "Count VIX" in their Complaint.

those elements, or his claim fails.  Id., citing Noske v. Friedberg, 670 N.W.2d 740, 743 (Minn. 2003).

The Murrins claim that they have pled three (3) bases for an attorney-client relationship between themselves and Fischer: contract; tort; and third-party beneficiary. See, Anoka Orthopaedic Assocs., P.A. v. Mutschler, 773 F. Supp. 158, 166 (D. Minn. 1991)(recognizing all three theories); see also, McIntosh County Bank v. Dorsey & Whitney, LLP, 726 N.W.2d 108, 114 (Minn. App. 2007), citing Admiral Merchs. Motor Freight, Inc. v. O'Connor & Hannan, 494 N.W.2d 261, 265 (Minn. 1992).

"Under Minnesota law, an attorney-client relationship is established when the parties enter an express or implied contract of representation or when an individual seeks and receives legal advice under circumstances which would lead a reasonable person to rely on such advice."  Macawber Engineering, Inc. v. Robson & Miller, 47 F.3d 253, 256 (8th Cir. 1995); see also, Togstad v. Vesely, Otto, Miller & Keefe, 291 N.W.2d 686, 693 n.4 (Minn. 1980).  The Murrins concede that they did not have a written contract with Fischer, but they argue that an attorney-client relationship can be found under an implied contract theory, as they implicitly agreed that Fischer would provide them with legal services, or alternatively, under a tort theory, as they received legal advice from Fischer, and reasonably relied on that advice.

The existence of an attorney-client relationship is a question of fact, that depends on the circumstances, and the nature of the communications, between the parties.  See, <u>Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan</u>, supra at 265; <u>Ronnigen v. Hertogs</u>, 199 N.W.2d 420, 422 (Minn. 1972).  In this instance, we find that the Murrins have pled sufficient facts to permit an attorney-client relationship with Fischer, under either a contract or tort theory.  Specifically, in Count I of the Complaint, the Murrins allege that Fischer "indicated he would undertake to represent the [Plaintiffs] as far as perfecting security on Avidigm's properties * * * and monitor said security * * * so as to fully protect the [Plaintiffs] at all times."  <u>Amended Complaint</u>, supra at ¶203.

The Murrins also allege, in Count III, that "it was understood by all parties including Avidigm that a failure to perform a function attributable and undertaken by Fischer would harm the [Plaintiffs]," and that they "believed [Fischer] was acting as their attorney and justifiably relied on it."  <u>Id.</u> at ¶238.  Essentially, the Murrins allege that Fischer promised to act in their interest to secure their investment with Avidigm, by using foreclosed properties that were held by Avidigm, and that Fischer failed to perform this function, or performed it negligently.  See, e.g., <u>id.</u> at ¶¶35, 42-43, 146.

- 16 -

Moreover, according to the Amended Complaint, although Murrin is an attorney, and planned to personally secure the Murrins' investment, Fischer discouraged him from doing so by stating that Fischer had superior knowledge and expertise.  Id. at ¶607.  The Murrins claim that Fischer repeatedly reassured them that he had perfected their security, or was in the process of doing so, thereby causing the Murrins to reasonably rely on his representations, which led to their damage, when Avidigm defaulted on the Security Agreement.[5]

---

[5]Additionally, the Murrins contend that they have stated a basis to allege an attorney-client relationship with Fischer, as they were the third-party beneficiaries of the relationship between Fischer and Avidigm, since Fischer and his law firm were the sole entities charged with the task of securing the Murrins' interest on the foreclosed properties.  "[A]n intended third-party beneficiary may bring an action for legal malpractice in those situations when the client's sole purpose is to benefit the third party directly, and the attorney's negligent act caused the beneficiary to suffer a loss."  Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan, supra at 266, citing Marker v. Greenberg, 313 N.W.2d 4, 5 (Minn. 1981).  The Court will balance the extent to which the transaction was intended to affect the putative third-party beneficiary, the foreseeability of harm, the degree of certainty that the beneficiary suffered harm, the closeness of the connection between the law firm's behavior and the injury, and public policy issues.  Id.

The Murrins have not pled any facts that would support a claim that Avidigm's "sole purpose in retaining [Fischer] [was] to benefit directly [the Murrins]."  See, In re: SRC Holding Corp., 364 B.R. 1, 34 (D. Minn. 2007), quoting Marker v. Greenberg, supra at 5.  Indeed, the Murrins allege that Fischer already had a relationship with Avidigm, prior to the business transaction with the Murrins, and they
(continued...)

Accordingly, on the face of the Amended Complaint, we find that the Murrins have stated a cause of action against the Fischer Defendants for malpractice, under either a contract or tort theory, and we recommend that the Fischer Defendants' Motion to Dismiss the various malpractice claims, as to Fischer, be denied except insofar as the Murrins pled a claim predicated on their purported status as third-party beneficiaries.

2)   <u>The Other Claims Against Fischer</u>.   The Fischer Defendants also argue that the Murrins have failed to state a claim as to Fischer for fraud; for a violation of RICO; for interference with security/prospective business advantage; for consumer fraud; and for theft of property under Minnesota Statutes Sections 604.12 and 609.52.

a)   <u>Fraud</u>.   In support of their Motion to Dismiss, the Fischer Defendants argue that the Murrins have failed to allege any past or present facts, which would support a claim of fraud as to Fischer, and that, to the extent that

---

[5](...continued)
have not established their status as third party beneficiaries, and therefore, their claims based solely on that theory should be dismissed.

the Murrins allege false representations of future acts by Fischer, their allegations are insufficient.

Rule 9(b), Federal Rules of Civil Procedure, requires that, when pleading a claim of fraud, "the circumstances constituting fraud * * * shall be stated with particularity." As a result, the circumstances constituting fraud "must be concrete and sufficiently particularized to give Defendants notice of 'what conduct is complained of and to prepare a defense to such claim of misconduct.'" First Presbyterian Church of Mankato v. John Kinnard & Co., 881 F. Supp. 441, 445 (D. Minn. 1995), quoting Goldman v. Belden, 98 F.R.D. 733, 735 (W.D.N.Y. 1983). "Particularity," as the term is employed in Rule 9(b), "means the who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990), cert. denied, 498 U.S. 941 (1990); see also, Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1069 (8th Cir. 1995), quoting Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982), cert. denied, 464 U.S. 1008 (1983)(In order to satisfy Rule 9(b), in the assertion of a claim that involves an asserted misrepresentation of fact, a plaintiff must specify "'the time, place and contents of false representations, as well as the identity of the person making the mis-representation and what was obtained or given up thereby.'").

Moreover, to bring a fraud claim in Minnesota, the plaintiff must "plead with specificity that (1) there was a false representation regarding a past or present fact, (2) the fact was material and susceptible of knowledge, (3) the representer knew it was false or asserted it as his or her own knowledge without knowing whether it was true or false, (4) the representer intended to induce the claimant to act or justify the claimant in acting, (5) the claimant was induced to act or justified in acting in reliance on the representation, (6) the claimant suffered damages, and (7) the representation was the proximate cause of the damages." Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 747 (Minn. 2000); see also, Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986), citing Burns v. Valene, 214 N.W.2d 686, 689 (Minn. 1974).

Where the plaintiff alleges the false representation of future acts, "an additional element of proof is that the party making the representation had no intention of performing when the promise is made." Martens v. Minn. Mining & Mfg. Co., supra at 747, citing Vandeputte v. Soderholm, 216 N.W.2d 144, 146 (Minn. 1974)("It must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made."). However, "general and indefinite" statements and opinions are not factual representations. Id., quoting Swedeen v. Swedeen, 134 N.W.2d 871, 875 (Minn. 1965).

On the face of the Murrins' Amended Complaint, we find that they have pled a cause of action for fraud against Fischer.  In Count VI, the Murrins allege that Fischer engaged in fraud, during the meeting on August 20, 2004, when he advised them that he would secure their investment, despite having no intention to do so, and that, on October 8, 2004, Fischer fraudulently communicated to the Murrins that the North Dakota property had enough equity to support a lien of $900,000.00, despite having personal knowledge that Avidigm did not own that property, and so could not offer it as security for the Murrins' investment.  See, Amended Complaint, supra at ¶267.

Although those pleadings are skeletal, they are sufficiently specific to put Fischer on notice, as to the time, place, and substance of those acts, which the Murrins allege were fraudulent, and thereby satisfy the Murrins' pleading burden as to both fraud, and the false representation of future acts.  Thus, we recommend that the Fischer Defendants' Motion to Dismiss those Counts be denied.

        b)  The RICO Claim.  The Fischer Defendants also urge that the Murrins' RICO claim fails, as the Murrins have failed to allege that they suffered an injury "by reason of" a RICO violation.

Title 18 U.S.C. §1962 provides as follows:

(a)    It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity * * * to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate * * * commerce. * * *

(b)    It shall be unlawful for any person through a pattern of racketeering activity * * * to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c)    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity * * *.

(d)    It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Title 18 U.S.C. §1962.

Title 18 U.S.C. §1964 further provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit * * * except that no person may rely upon any

conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." Title 18 U.S.C. §1964(c).

As defined by RICO, an enterprise has three (3) components:  (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure different from that inherent in a pattern of racketeering.  See, United States v. Lee, 374 F.3d 637, 647 (8th Cir. 2004), cert. denied, 545 U.S. 1141 (2005); United States v. Kehoe, 310 F.3d 579, 586 (8th Cir. 2002), cert. denied, 538 U.S. 1048 (2003); McDonough v. National Home Insur. Co., 108 F.3d 174, 177 (8th Cir. 1997); United States v. Lemm, 680 F.2d 1193, 1198 (8th Cir. 1982), cert. denied, 459 U.S. 1110 (1983).

Our Court of Appeals has defined a "continuity of structure" as consisting of "an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than ad hoc basis," United States v. Kragness, 830 F.2d 842, 856 (8th Cir. 1987), and has explained that the requirement of an "ascertainable structure" can be demonstrated "by proof that a group engaged in a diverse pattern of crimes or that it has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes." Diamonds Plus, Inc. v. Kolber, 960 F.2d 765, 770 (8th Cir. 1992), quoting United States v.

Bledsoe, 674 F.2d 647, 665 (8th Cir. 1982).  "The 'enterprise' is not the 'pattern of racketeering activity;' as it is an entity separate and apart from the pattern of activity in which it engages."  United States v. Turkette, 452 U.S. 576, 583 (1981).  Therefore, Courts examining this prong will look to see if the plaintiff has alleged that the enterprise "encompasses more than what is necessary to commit the predicate RICO offense."  Diamonds Plus, Inc. v. Kolber, supra at 770.

To constitute a pattern of racketeering activity, the plaintiff must plead the existence of at least two (2) predicate acts of racketeering activity, as defined in Title 18 U.S.C. §1961(1), and must further establish that those predicate acts manifest the elements of "continuity plus relationship."  H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 238-39 (1989).  Continuity can be either closed- or open-ended. Id. at 241-42.  "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time," although "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."  Id.; see also, United States v. Hively, 437 F.3d 752, 761 (8th Cir. 2006)(noting that Courts have found that closed-ended continuity requires a scheme that lasts at least one year).  In contrast, open-ended continuity can be established by showing the existence of a

specific threat that extends indefinitely into the future.  See, <u>Lange v. Hocker</u>, 940 F.2d 359, 361 (8th Cir. 1991); see also, <u>United States v. Hively</u>, supra at 761.

Finally, our Court of Appeals has held that the heightened pleading requirements of Rule 9(b), Federal Rules of Civil Procedure, apply to allegations of fraud in a civil RICO Complaint.  See, <u>Abels v. Farmers Commodities Corp.</u>, 259 F.3d 910, 920 (8th Cir. 2001); see also, <u>Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.</u>, supra at 1069.  As we have already noted, in alleging fraud the pleading must contain "a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." <u>Schaller Tel. Co. v. Golden Sky Sys., Inc.</u>, 298 F.3d 736, 746 (8th Cir. 2002), quoting <u>Abels v. Farmers Commodities Corp.</u>, supra at 920.

To satisfy the requirements of Rule 9(b), "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  <u>United States ex rel. Joshi v. St. Luke's Hospital, Inc.</u>, 441 F.3d 552, 556 (8th Cir. 2006), cert. denied, --- U.S. ---, 127 S.Ct. 189 (2006); see also, <u>Lally v. Crawford County Trust & Savings Bank</u>, 863 F.2d

612, 613 (8th Cir. 1988)("In pleading RICO violations, a litigant must allege the time, place, and content of all false representations.").

With those requirements in mind, we turn to the specific RICO violations that have been alleged by the Murrins. In Count XXI of their Amended Complaint, the Murrins allege that Fischer violated RICO, Title 18 U.S.C. §§1962(a), (b), and (c), and in Count XXII, they allege that Fischer also violated the Minnesota RICO law, Minnesota Statutes Section 609.911.

A)      Section 1962(a) Claims Against Fischer.

In order to state a claim under Section 1962(a), a plaintiff must "allege an injury from the use or investment of the racketeering income that is separate and distinct from injuries allegedly caused by the defendant's engaging in the predicate acts." Fogie v. THORN Americas, Inc., 190 F.3d 889, 896 (8th Cir. 1999). In Fogie v. THORN Americas, Inc., supra at 896, our Court of Appeals held that the District Court had properly dismissed a claim, which was brought under Section 1962(a), for lack of standing, solely on the basis that "the plaintiffs have not and apparently cannot allege an injury from a use or investment distinct or separate from the predicate acts they allege." See also, Rolfes v. MBNA America Bank N.A., 416 F. Supp. 2d 745, 750 (D.S.D. 2005).

In the Murrins' Amended Complaint, even though they cite to Section 1962(a), they assert no allegations that they suffered an injury, based on actions taken by any of the Defendants, that arose from the investment of proceeds from a racketeering scheme. In fact, the Murrins repeatedly claim that their sole injury arises from the lost value of their $600,000.00 investment, as well as the alleged loss of their security interest in the North Dakota property, together with attorney's fees. See, e.g., Amended Complaint, supra at ¶¶618-622. By failing to plead any facts that would establish that the Murrins have suffered an injury that was separate from the injury allegedly caused by the Defendants' predicate acts, they have failed to state a claim, under Section 1962(a), and we recommend that any claim against Fischer brought under that Section be dismissed.

B)   Section 1962(b) Claims Against Fischer.

To state a claim under Section 1962(b), a plaintiff must allege the existence of a RICO enterprise, and additionally, must plead facts that support the allegation that the defendant acquired an interest in, or maintained control of, that enterprise, through a pattern of racketeering activity. See, Beck v. Prupis, 529 U.S. 494, 498-99 (2000); see also, Information Exchange Sys., Inc. v. First Bank Nat'l Assoc., 994 F.2d 478, 485 (8th Cir. 1993).

The Supreme Court has noted that, although RICO broadly describes an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," see, Title 18 U.S.C. §1961(4), for purposes of Section 1962(b), an "enterprise" is specifically "something acquired through the use of illegal activities or by money obtained by illegal activities." National Organization of Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994). Thus, to satisfy the pleading requirements of Section 1962(b), the Murrins would have to allege that Fischer acquired an interest in, or maintained control of Avidigm, and that he did so by engaging in racketeering activities, or by using money that he obtained through racketeering activities.

In their Complaint, the Murrins generally allege that Fischer served as "either a principal, partner, owner, member or employee," of Avidigm, see, Amended Complaint, supra at ¶4, and that he acted as an attorney on its behalf, see, e.g., id. at ¶¶34, 71, but they allege no specific facts that would support a claim that Fischer had an interest in, or control of Avidigm. The only reference that the Murrins make to Avidigm's internal structure is their claim that Mattson was the CEO of Avidigm at all relevant times. Id. at ¶91. Instead, the Murrins rely on boilerplate restatements of the statutory language, and claim that Fischer "violated []Section 1962(b) by engaging in

unlawfully acquiring and maintaining an interest in the enterprise (Avidigm) through a pattern of racketeering activity, namely by engaging in a scheme amounting to wrongful conduct * * * [and] fraudulent transfers of Avidigm property, money, mortgages, and liens which had the effect of cheating the [Plaintiffs] out of their money." Id. at ¶452.

However, as we have detailed, conclusory allegations of fraud, without more, do not satisfy the heightened Rule 9(b) pleading standard. The only specific allegation, that the Murrins make regarding Fischer's relationship to Avidigm, is that he served as its attorney, and "furnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncement in Reves." Handeen v. Lemaire, 112 F.3d 1339, 1348 (8th Cir. 1997). Absent a pleading that alleges specific times, places, and transactions, which support their claim that Fischer acquired an interest in, or controlled Avidigm through specific racketeering activities, the Murrins' claims, under Section 1962(b), must fail, and should be dismissed.

C) <u>Section 1962(c) Claims Against Fischer</u>.

For a cause of action under Section 1962(c), in addition to pleading the existence of a RICO enterprise, a plaintiff must establish that the defendant either directly, or

indirectly, engaged in conduct, in association with the enterprise, by participating in a pattern of racketeering activity, which consisted of at least two (2) predicate acts of racketeering that satisfy the "continuity plus relationship" requirement.  See, H.J. Inc. v. Northwestern Bell Telephone Co.,supra at 232-33; see also, In re: Sac and Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litigation, 340 F.3d 749, 767 (8th Cir. 2003).  We begin with a discussion of the enterprise requirement.

In the Amended Complaint, the Murrins describe Avidigm as a Minnesota corporation that is engaged in the business of purchasing foreclosed properties, id. at ¶33, and they allege that it conducts its business by securing its investors' contributions with liens on other investment properties.  Id. at ¶¶24-27.  In addition, the Murrins state that they had participated in financial transactions with Avidigm, prior to the incidents alleged in the Complaint, which resulted in the anticipated return of their investment.  Id. at ¶31.  Construing the claims in the Murrins' Complaint liberally, as we must on a Motion to Dismiss, we find that they have pled sufficient facts to establish that Avidigm possessed an organizational structure, beyond the racketeering activities of wire, mail, and bank fraud, as alleged in the Amended Complaint, and therefore, they have met their burden on that element.

The Murrins must also establish that Fischer was employed by, or was associated with, Avidigm.  The Supreme Court has confirmed that liability, under Section 1962(c), is not limited solely to those individuals who have some formal position in the alleged enterprise, but extends to those who have "**some** part in directing the enterprise's affairs," and no liability will attach, under Section 1962(c), "unless one has participated in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 179, 183 (1993)[emphasis added]; see also, United States v. Darden, 70 F.3d 1507, 1543 (8th Cir. 1995), cert. denied, 518 U.S. 1026 (1996); Nolte v. Pearson, 994 F.2d 1311, 1317 (8th Cir. 1993).

Our Court of Appeals has held that, for claims alleging liability under Section 1962(c):

> Mere participation in the predicate offenses listed in RICO, even in conjunction with a RICO enterprise, may be insufficient to support a RICO cause of action.  A defendant's participation must be in the conduct of the affairs of a RICO enterprise, which ordinarily will require some participation in the operation or management of the enterprise itself.

Bennett v. Berg, 710 F.2d 1361, 1364 (8th Cir. 1983), cert. denied, 464 U.S. 1008 (1983).

We find that the Murrins have also satisfied that pleading requirement.

As we have previously addressed, in their Amended Complaint, the Murrins allege that Fischer served as an attorney on behalf of Avidigm, and participated in business transactions as Avidigm's agent.  See, Amended Complaint, supra at ¶¶34, 71.  Moreover, they claim that Fischer was at the meeting on August 20, 2004, and participated in a discussion concerning the Murrins' investment in Avidigm, and the procurement of a security for that investment.  Id. at ¶¶28-38.  Although we do not have a wealth of specific information in the pleadings before us, we find that the Murrins have satisfied their burden, on a Motion to Dismiss, to allege facts that would show that Fischer was an agent of Avidigm, and an alleged participant in its operation.

Finally, the Murrins must establish the existence of a "pattern of  racketeering activity" that involves at least two (2) predicate acts.  See, Title 18 U.S.C. §1961(5); Manion v. Freund, 967 F.2d 1183, 1185 (8th Cir. 1992).  In their Amended Complaint, the Murrins allege four (4) separate groups of predicate acts, that were assertedly committed by Fischer, so as to satisfy the requisites of Section 1961.  In their first claim, the Murrins allege that Fischer was the "legal front man" in a scheme to perpetrate bank fraud, in violation of Title 18 U.S.C. §1344(2), which caused the Murrins, and various banks, to loan money to Avidigm.  Id. at ¶463(a).  Rather than providing any facts, which relate to any of those allegedly fraudulent transactions,

however, the Murrins simply list a number of financial institutions that were purportedly defrauded, and suggests that, "for further details," the Court should consult related cases that have been filed in State Court.  Id.

Although the Murrins provide a handful of locations which, presumably, designate properties that were affected by the allegedly fraudulent money transfers, they make no effort to connect those locations with any specific acts that would violate Section 1344.  Even if the Murrins had provided the Court with information relating to the nature of the pending State Court cases, we are charged, here, with examining the adequacy of the Amended Complaint, and it exceeds our responsibility to independently conduct, at the invitation of any party, an investigation into other claims that have allegedly been filed against the Defendants.  A mere recitation of names or locations, with no more particularized, factual allegations, fails to meet the pleading standard for fraud, and fails to plead bank fraud with sufficient particularity to establish predicate acts that would establish liability under Section 1962(c).

As a second basis for their claim, the Murrins allege that Fischer engaged in theft, in violation of Minnesota Statutes Section 609.52, and Title 18 U.S.C. §§1343, 1341, 1952, 1957, 2314, and 2315.  Id. at ¶463(b).  However, the Murrins offer no factual allegations to support that claim whatsoever, but suggest that the Court rely on

Fischer's conduct, as described in the allegations of bank fraud.  Id.  As we have already noted, those allegations fail to satisfy the pleading requirement of Section 1962(c), and consequently, the Murrins have failed to state a claim as to their allegations of theft as a predicate act.

The Murrins then allege that Fischer engaged in mail and wire fraud, in violation of Title 18 U.S.C. §§1341 and 1342.   Id. at ¶463(c).  Specifically, they claim that Fischer caused the Murrins to contribute money to Avidigm, through telephone conversations that took place in September of 2004, on October 8, 2004, December 21, 2004, and March 4, 2005, in letters dated January 18, 2005 and March 2, 2005, and in various e-mails that were sent in 2006.  Id.  Even interpreting the Amended Complaint in a light most favorable to the Murrins, we are unable to find that those allegations satisfy the requirement that a pleading give notice to the Defendants of the specific wrongdoings of which they are accused.

The Murrins have simply alleged that telephone calls were made, and letters and e-mails were sent, in certain months or on specific dates, but they have not connected each communication with the name of the Defendant who is alleged to have initiated that communication, nor have they provided any degree of specificity about the nature of that communication.  While the defense to a Motion to Dismiss is very lenient, here,

the Murrins have failed to provide the Defendants, or the Court, with any recitation of the substance of the fraud that has been alleged.

Finally, the Murrins allege the existence of "miscellaneous predicate acts," that consist primarily of forging legal documents that are related to the North Dakota property. Id. at ¶463(d). As with the Murrins' other allegations, however, they have failed to include any facts that would provide a basis for their allegations. Even interpreted generously, those claims lack the requisite specificity, since they do not contain any allegations of the time, place, or contents, of the false representations. Since we find that the Murrins have failed to allege facts, that would support even a single predicate act, we conclude that they have not satisfied their burden in pleading a claim under Section 1962(c), and this claim should be dismissed.

D)    Section 1962(d) Claims Against All of the Defendants.    In addition, the Murrins contend that each of the individual Defendants, including Fischer, is liable under Title 18 U.S.C. §1962(d), as a participant in a conspiracy to violate RICO. A conspiracy claim, under Section 1962(d), depends upon the success of a claim under Sections (a), (b) or (c), and a plaintiff must additionally allege the existence of a conspiracy to violate RICO, and provide facts that tend to show that the defendants entered into an agreement to effect that violation.

See, Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 954 (8th Cir. 1999), cert. denied, 528 U.S. 1117 (2000); Handeen v. Lamaire, supra at 1354-55.  As we have determined, since the Murrins have failed to state a claim under Sections 1962(a), (b), or (c), they have failed to meet their burden, and we must recommend the dismissal of their Section 1962(d) conspiracy claim.

In sum, we find that the Murrins have failed to plead sufficient facts to allege a RICO claim against any of the Defendants, and the RICO claim should be dismissed in its entirety.

c)      Interference  with  Security/Interference  with Prospective Business Advantage.  Under Minnesota law, "[u]nfair competition is not a tort with specific elements," but rather, "it describes a general category of torts which courts recognize for the protection of commercial interests."  Zimmerman Group v. Fairmount Foods of Minnesota, 882 F. Supp. 892, 895 (D. Minn. 1994), quoting Rehabilitation Specialists, Inv. v. Koering, 404 N.W.2d 301, 305-06 (Minn. Ct. App. 1987).  One of the torts that is included, under the rubric of unfair competition, is the tortious interference with contractual interests.  See, United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632 (Minn. 1982).  However, if the underlying tort is duplicative of another Count of the Complaint, the claim for unfair competition

cannot stand.  See, <u>Zimmerman Group v. Fairmount Foods of Minnesota</u>, supra at 895; <u>Goddard, Inc. v. Henry's Foods, Inc</u>. 291 F. Supp.2d 1021, 1034 (D. Minn. 2003)("Under this doctrine, if we find that the underlying tort is duplicative of another Count of the Complaint, the claim for unfair competition must be dismissed"); see also, <u>LensCrafters, Inc. v. Vision World, Inc</u>., 943 F. Supp. 1481, 1490 (D. Minn. 1996); <u>Guy Carpenter & Co., Inc. v. John B. Collins & Associates, Inc.</u>, 2006 WL 2502232 at *9 (D. Minn., August 29, 2006).

In their Amended Complaint, the Murrins allege that Fischer "intentionally or recklessly" interfered in their contract with Avidigm, by failing to adequately secure their investment.  See, <u>Amended Complaint</u>, supra at ¶248.  However, the Murrins have premised numerous other Counts, in their Amended Complaint, on the same factual basis; namely, that Fischer failed to properly secure their investment.  See, e.g., <u>id.</u> at ¶328; 336; 340.  For that reason, we find that the Murrins' interference claims, as to Fischer, are duplicative, and should be dismissed.

d)  <u>Consumer Fraud</u>.  In Count XIV, the Murrins allege that Fischer committed consumer fraud, in violation of North Dakota and Minnesota law.  Specifically, the Murrins allege that Fischer violated the North Dakota Consumer Fraud Act ("NDCFA"), <u>Section 51-15-02, N.D.C.C.</u>, as well as the

Minnesota Consumer Fraud Act ("MCFA"), <u>Minnesota Statutes Sections 325F.68-70</u>, the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"), <u>Minnesota Statutes Section 325D.43-80</u>, and the Minnesota False Statement in Advertising Act ("MFSAA"), <u>Minnesota Statutes Section 315F.67</u>.   The Fischer Defendants argue that those consumer fraud claims should be dismissed, as they are based on the sale of a security to the Murrins, which was made by Avidigm, rather than Fischer.

Each of the consumer fraud Statutes, which have been referenced by the Murrins, provides a cause of action that is separate from common law fraud, and that imposes broad duties not to deceive consumers.   See, <u>Dahl v. R.J. Reynolds Tobacco Co.</u>, 742 N.W.2d 186, 196 (Minn. App. 2007).   "While causation is a necessary element in a damages claim under the misrepresentation in sales statutes," a plaintiff is not required to make a strict showing of direct causation in survive a Motion to Dismiss.   <u>Group Health Plan, Inc. v. Philip Morris, Inc.</u>, 621 N.W.2d 2, 14 (Minn. 2001).

The MCFA bars "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has been misled, deceived, or damaged

thereby."[6]  Minnesota Statutes Sections 325F.69, Subdivision 1; see also, Alsides v.
Brown Institute, Ltd., 529 N.W.2d 468, 474 (Minn. App. 1999).  The term "person"
is defined as "any natural person or legal representative, partnership, corporation
(domestic and foreign), company, trust, business entity, or association, and any agent,
employee, salesperson, partner, officer, director, member, stockholder, associate,
trustee, or cestui que trust thereof."  Minnesota Statutes Section 325F.68, Subdivision
3.

An individual engaged in deceptive trade practices violates MUDTPA when, "in
the course of business, vocation, or occupation," the person "engages in any * * *
conduct which creates a likelihood of confusion or misunderstanding."  Minnesota
Statutes Section 325D.44, Subdivision 1(13).  Finally, in relevant part, the MFSAA
prohibits a person from advertising, with the intent to sell a security to the public, "any
material assertion, representation, or statement of fact which is untrue, deceptive, or
misleading."  Minnesota Statutes Section 325F.67.

---

[6]The NDCFA is substantively similar to the MCFA, and bars "[t]he act, use, or
employment by any person of any deceptive act or practice, fraud, false pretense, false
promise, or misrepresentation, with the intent that others rely thereon in connection
with the sale or advertisement of any merchandise, whether or not any person has been
mislead, deceived, or damaged thereby."  Section 51-15-02, N.D.C.C.

In their Amended Complaint, the Murrins generally allege that Fischer served as "either a principal, partner, owner, member or employee," of Avidigm, see, <u>Amended Complaint</u>, supra at ¶4, and that he acted as an attorney on its behalf, see, e.g., <u>id.</u> at ¶¶34, 71.   Moreover, throughout the Amended Complaint, as previously addressed, the Murrins have alleged that Fischer made false assertions in the course of selling them a security.   Based on those assertions, we find that the Murrins have satisfied their burden, in pleading consumer fraud against Fischer, and this claim should not be dismissed.

e)   <u>Theft of Property under Minnesota Statutes Sections 604.14 and 609.52</u>.   In Count XVII, the Murrins claim that Fischer is liable for theft under Minnesota Statutes Section 604.14 and, in Count XX, the Murrins allege that Fischer failed to disclose material facts, in violation of Minnesota Statutes Section 609.52.   Specifically, the Murrins allege that "Fischer, in participating in the meeting on or about August 20, 2004, and his involvement with those at the meeting and other subsequent communication and activities as alleged herein had the effect of reckless and criminal neglect that constituted and involved the activity of stealing property from the Murrins * * * which amounted to theft," <u>Amended Complaint</u>, supra

at ¶430, and further claim that Fischer's failure to disclose material facts constituted theft of property.  Id. at ¶441.

Section 604.14 provides for civil liability for theft.  See, Minnesota Statutes Section 604.14 ("A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen.").  A conviction is not required for liability.  See, Minnesota Statutes Section 604.14, Subdivision 4.  "Theft" is defined by Minnesota Courts to include obtaining property from another person "by swindling, whether by artifice, trick, device, or any other means."  Minnesota Statutes Section 604.14, Subdivision 2(4); see, State v. Ruffin, 158 N.W.2d 202, 205 (Minn. 1968)("[T]he gist of the offense is the cheating and defrauding of another by deliberate artifice.").  "The fact that the transaction has the appearance of a legitimate business contract may obscure its true nature, but not prevent it from constituting a swindle." State v. Wells, 121 N.W.2d 68, 69 (Minn. 1963).

According to the Murrins, Fischer participated in obtaining, through the vehicle of Avidigm, $600,000.00 of the Murrins' money by representing that the money would be secured when, in fact, Fischer intended to cheat the Murrins of those funds.  The Murrins have satisfied the minimal pleading standard here, and this claim should be allowed to remain.

As to the Murrins allegations, under Section 609.52, this is a criminal statute "and therefore is inapplicable for purposes of enhancing civil damages." OnePoint Solutions v. Borchert, 486 F.3d 342, 350 (8th Cir. 2007). Thus, the Murrins' claims for theft, under Section 609.52, should be dismissed.

b.      Claims Against J. Fischer, and Jeffery.   Although J. Fischer and Jeffery brought separate Motions to Dismiss, both the Murrins, and those Defendants, cross-reference the Motions, and consequently, we address both Motions jointly.

Jeffery and J. Fischer argue that none of the Counts, which are contained in the Amended Complaint, contain any direct allegations against them, but merely allege "vicarious liability" by virtue of the fact that J. Fischer, and Jeffery, were partners in Fischer's law firm, Fischer, Fischer & Jeffery LLC. See, Amended Complaint, supra at ¶¶5-6. The Murrins counter that, in Count XXIV, they allege that the law firm of Fischer, Fischer & Jeffery LLC, was not properly formed, as either a law firm, or an LLC, id. at ¶490, and that, in Count XXVIII, the Murrins claim that J. Fischer and Jeffery served, though their association with Fischer, as the alter-ego of Avidigm, and further, they allege that, "upon information and belief, * * * [Jeffery and J. Fischer] became aware of all operative facts and as such, they ratified and adopted them as

- 42 -

their own and are liable therefore." Id. at ¶510.  Moreover, the Murrins allege that both

J. Fischer and Jeffery are implicated in Count XXVII, which calls for the piercing of

Avidigm's corporate veil.

In general, "[a] partnership is liable for loss or injury caused to a person * * *

as a result of a wrongful act or omission, or other actionable conduct, of a partner

acting in the ordinary course of business of the partnership or with authority of the

partnership." Moren ex rel. Moren v. JAX Restaurant, 679 N.W.2d 165, 167 (Minn.

App. 2004), quoting Minnesota Statutes Section 323A.3-05(a); see also, Bedow v.

Watkins, 552 N.W.2d 543, 546 (Minn. 1996).  However, because of the added

protection provided by the form of an LLC, "a member, governor, manager, or other

agent of a limited liability company is not, merely on account of that status, personally

liable for the acts, debts, liabilities, or obligations of the limited liability company."

See, Minnesota Statutes Section 322B.303, Subdivision 1.  The Murrins concede that

the formation of an LLC provides protection against liability to its members, but they

allege that Fischer, Fischer & Jeffery, LLC, was improperly formed, with the result

that we should consider J. Fischer and Jeffery to have been general partners, and

thereby subject to liability for Fischer's acts or omissions.

As relevant to the formation of an LLC, Minnesota Statutes Section 322B.18 provides that, when the articles of an organization have been filed with the Secretary of State, and the required fee has been paid, it is presumed that all conditions precedent, which are required to be performed, have been complied with, and the Secretary of State shall issue a certificate of organization.   In addition, Minnesota Statutes Section 319B.11 provides that a professional firm may not perform professional services, within the State, until that firm files with the appropriate professional board -- here, the Lawyers Professional Responsibility Board -- a copy of the firm's organizational document, an annual report, and a fee of $100.00.   See, Minnesota Statutes Section 319B.11, Subdivision 3.

The Murrins argue, first, that the law firm filed the annual report, which is required under Section 319B.11, with the Lawyers Professional Responsibility Board on December 1, 2004, and only submitted a $25.00 fee, rather than the $100.00 required by Statute which, they allege, means that the LLC was improperly formed, and was not entitled to perform professional services.   The Defendants respond that, even taking the Murrins' assertions as true, under Minnesota Statute Section 319B.11, no board, including the Lawyer's Professional Responsibility Board, may require a person, who provides personal services through a firm, to assume greater liability than

is contemplated under Minnesota Statutes Section 319B.06, Subdivision 3, which provides that Section 318 et seq. does not alter any law applicable to the relationship between professionals and their clients.

According to the General Comment to Section 319B.06, the intention of the legislature, in drafting the Professional Firm Statute, was to insure that the corporate shield, which is applicable to a professional firm, was that "provided by its generally applicable governing law," rather than the Professional Firm Statute.  See, General Commentary, Minnesota Statutes Section 319B.06.  As a result, the source of the corporate shield, for a professional firm organized as an LLC, is the LLC Statute, Minnesota Statutes Section 322B.303, and not the Professional Firms Statute.  To the extent that the Murrins rely on their allegations, that J. Fischer and Jeffery are liable, because of the failure of Fischer, Fischer & Jeffery, LLC, to file a less than full fee with the Lawyers Professional Responsibility Board, we find that those claims must be dismissed.

In the alternative, the Murrins argue that the LLC agreement, which was filed by Fischer, Fischer & Jeffery, LLC, was inadequate, as it did not include the specific language that is required under Minnesota Statutes Section 319B.03, Subdivision 2. That Section requires that a firm, which seeks to furnish professional services in

Minnesota, must include statements in its organizational document that recite that the firm elects to operate under the Professional Firms Statutes, acknowledges that it subject to those Statutes, and specifies which type of professional services the firm is authorized to provide.  See, <u>Minnesota Statutes Section 319B.03, Subdivision 2</u>.

The Murrins contend that they have not found that language in any document, which has been submitted by the Defendants to the Court.  However, Section 319B.03 further provides that the statement "may be made when a Minnesota firm initially files the organizational document or may be added at a later time by updating that document," and so the lack of a statement at this, or any other time, is not dispositive of the successful formation of an LLC.  On the face of the Amended Complaint, we cannot find that the Murrins have alleged facts that would allow us to find that J. Fischer or Jeffery are in any way liable, for any of the alleged wrongdoings of Fischer, or have committed any personal wrongdoing against the Murrins, and consequently, we recommend that the Motions to Dismiss of J. Fischer and Jeffery be granted.

c.      <u>Bluestem, Agassiz Ridge, INRE Title, and Real Source</u>.

These Defendants argue that the Murrins have failed to state a claim against any of the remaining Fischer Defendants, namely Bluestem, Agassiz Ridge, INRE Title, and Real Source, under an "alter ego" theory.  In response, the Murrins maintain that they have

sufficiently satisfied the liberal pleading standard, under which we evaluate a Complaint on a Motion to Dismiss.  In Count XXV, the Murrins allege that INRE Title was the alter-ego of Fischer, and in the alternative, that each of Fischer's acts were made as an agent of INRE Title.  See, Amended Complaint, supra at ¶¶497-99.  In Count XXVII, the Murrins claim that Bluestem, and Agassiz Ridge, were employed by Fischer to perpetrate a fraud, see, Amended Complaint, supra at ¶¶395, 503-09, and additionally, they allege that Real Source was employed by Fischer to perform services for the Murrins.  Id. at ¶13.

Under Minnesota law, Courts charged with determining whether an entity is the alter-ego of a shareholder employ a two (2) step analysis, looking first at the relationship between the individual and the entity, and focusing on factors, such as the failure to observe corporate formalities, and the siphoning of funds by the individual, and then turning to the relationship between the entity, and the party seeking to pierce the corporate veil.  See, e.g., United States v. Scherping, 187 F.3d 796, 802 (8th Cir. 1999), cert. denied, 528 U.S. 1162 (1999)(addressing "alter ego" theory under Minnesota law), citing Victoria Elevator Co. v. Meridian Grain Co., 283 N.W.2d 509, 512 (Minn. 1979).  "[O]nly if the entity has operated in a fraudulent or unjust manner toward that party will the entity be disregarded."  Id.

In order to survive a Motion to Dismiss, the Murrins are not required to plead the factors that are set out in Victoria Elevator, for they merely have to provide the Defendants with notice as to the theory on which they plan to proceed, and of their intent to pierce the corporate veil.  See, Barton v. Moore, 558 N.W.2d 746, 749-50 (Minn. 1997), citing Maurice Sunderland Architecture, Inc. v. Simon, 1993 WL 750859 at *4 (D. Minn., December 30, 1993).   Here, the Murrins repeatedly assert that Bluestem, Agassiz Ridge, INRE Title, and Real Source, were entities that were entirely controlled by Fischer, and were used to defraud the Murrins, and we find that those allegations are sufficient to put the Defendants on notice of the Murrins' intent to seek to pierce the corporate veil.   Therefore, the Counts against Bluestem, Agassiz Ridge, INRE Title, and Real Source, should not be dismissed at this time.

d.    Leflore's Motion to Dismiss.

Although the Murrins claim that Leflore is implicated in a variety of Counts including conspiracy, interference with a security, and fraud,[7] they have only named her in two (2) Counts of the Amended Complaint -- Count VIII,

---

[7]Specifically, the Murrins allege that Leflore is implicated in the following Counts: Count V (interference with security); Counts XII-XIII (State and Federal security); Count XV (conspiracy); Count XVI (conversion); Count XX (theft); Count XXIX (conspiracy); Count XXXIII (fraud); and Count XXXIV (various common law claims).  See, Plaintiffs' Memorandum in Opposition, Docket No. 96, at p. 4.

which alleges a conspiracy to conduct fraudulent transfers, and Count XXVI, which alleges fraud.  See, <u>Amended Complaint</u>, supra at ¶¶309, 314, 500-502.

Leflore argues that the claims against her should be dismissed, since the Murrins have failed to allege any acts, which were taken by either Leflore as an individual, or Monet Management, LTD, that would state a claim, except for the Murrins' unsupported allegation that Leflore placed a dummy bid on the North Dakota property, in order to artificially inflate its value so that the Murrins would believe that it represented an adequate security for their interests.

1)    <u>The Conspiracy Claim</u>.  In Count VIII, the Murrins allege that Leflore, as a joint venturer with the other named Defendants, knew or should have known that certain unidentified transfers to her, from Avidigm, would defraud the Murrins.  See, <u>Amended Complaint</u>, supra at ¶314.

"A conspiracy is a combination of persons to accomplish an unlawful purpose or a lawful purpose by unlawful means."  <u>Harding v. Ohio Cas. Ins. Co.</u>, 41 N.W.2d 818, 824 (Minn. 1950); see also, <u>Lipka v. Minn. Sch. Employees Ass'n</u>, 537 N.W.2d 624, 632 (Minn.App. 1995).  A conspiracy claim "requires allegations of specific facts showing a 'meeting of minds' among alleged conspirators."  <u>Smithson v. Aldrich</u>, 235 F.3d 1058, 1063 (8th Cir. 2000), citing <u>Rogers v. Bruntrager</u>, 841 F.2d 853, 856 (8th

Cir. 1988).  In addition, a claim for civil conspiracy requires an underlying tort.  See, D.A.B. v. Brown, 570 N.W.2d 168, 172 (Minn.App. 1997).

However, where a plaintiff offers only conclusory allegations of a conspiracy against a party, the claim is adjudged to have been insufficiently pled, and is subject to dismissal.  See, Snelling v. Westhoff, 972 F.2d 199, 200-01 (8th Cir. 1992), cert. denied, 506 U.S. 1053 (1993); Williams-Bey v. Kempker, 2006 WL 1707962 at *1 (8th Cir., June 22, 2006); Cabal v. United States Department of Justice, 980 F.2d 734, 1992 WL 336447 at *2 (8th Cir. 1992)[Table Decision], cert. denied, 510 U.S. 831 (1993); Erickson v. Koochiching County,  2006 WL 752949 at *19 (D. Minn., March 22, 2006)("Here, the Plaintiff provides no detail as to what the conspiracy involved, its purpose, any acts done in the furtherance of the conspiracy, or what damages resulted from that conspiracy," and "[a]s a consequence, the Plaintiff's conspiracy allegations fail to meet any test of cognizability, as they are entirely devoid of specificity or factual support."); Boone v. PCL Construction Services, Inc., 2005 WL 1843354 at *7 (D. Minn., August 2, 2005).

While we understand the Murrins to broadly allege that Leflore somehow conspired with the other Defendants, such broad and nonspecific assertions of collusion fail as a matter of law.  See, Johnson v. Esry, 210 F.3d 379, 2000 WL

375269 at *1 (8th Cir., April 13, 2000)[Table Decision], citing <u>Manis v. Sterling</u>, 862 F.2d 679, 681 (8th Cir. 1988)("Allegations of conspiracy, however, must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'"), quoting <u>Smith v. Bacon</u>, 699 F.2d 434, 436 (8th Cir. 1983).   Here, the Murrins' conspiracy allegations are entirely devoid of specificity, and factual support.   From reading the Murrins' First Amended Complaint, Leflore would have no idea what, if any, transfers she is being accused of conspiring to participate in, or with whom she is accused of conspiring.   Indeed, the Murrins do not even clearly allege that Leflore knew of the existence of Avidigm.   Since the Murrins have not pled conspiracy, as to Leflore, with any specificity, we recommend that her Motion to Dismiss be granted.

2)   <u>Fraud</u>.   As previously detailed, Rule 9(b), Federal Rules of Civil Procedure, requires that, when pleading a claim of fraud, "the circumstances constituting fraud * * * shall be stated with particularity."   As a result, the circumstances constituting fraud "must be concrete and sufficiently particularized to give Defendants notice of 'what conduct is complained of and to prepare a defense to such claim of misconduct.'"   <u>First Presbyterian Church of Mankato v. John Kinnard & Co.</u>, supra at 445, quoting <u>Goldman v. Belden</u>, supra at 735.   Moreover, a fraud claim requires a plaintiff to plead, with specificity, that a false representation

- 51 -

was made, which the representer knew was false or asserted as her knowledge without knowing whether it was true or false.  See, <u>Martens v. Minn. Mining & Mfg. Co.</u>, supra at 747.  Here, in their Amended Complaint, the Murrins have not alleged any representations, made by either Leflore or Monet Management, that would satisfy the applicable pleading standard, and therefore, her Motion to Dismiss should be granted.

e.    <u>Kaiser's Motion for Judgment on the Pleadings</u>.

In Count V, the Murrins allege that Kaiser tortiously participated with Fischer in interfering with a prospective business relation with Avidigm, see, <u>Amended Complaint</u>, supra at ¶¶249-50, that Kaiser and Fischer knew, or should have known, that their behavior was reckless, and that Kaiser breached a fiduciary duty to the Murrins.  <u>Id.</u> at ¶250.  In addition, the Murrins allege that Fischer served as the agent of Kaiser's employer, and communicated material facts about the status of their security agreement.  <u>Id.</u> at ¶262.  In Count VIII, which alleges a conspiracy to conduct fraudulent transfers, the Murrins claim that Kaiser, together with Fischer, caused Avidigm to purchase empty lots at an inflated price, which unjustly enriched Kaiser.  <u>Id.</u> at ¶299.  Kaiser is also named in Counts XV, and XXIX, which allege conspiracy.  <u>Id.</u> at ¶388, 391-92; 522.

Kaiser argues that the claims against him are subject to dismissal, as the Amended Complaint fails to plead any facts with the requisite specificity.

1)   Tortious Interference.   In Count V, the Murrins allege that they had a business relationship with Avidigm, which Kaiser interfered with by working with Fischer to secure other parties on properties ahead of the Murrins.   The Murrins also allege that Kaiser, as a bank officer, breached a fiduciary duty to the Murrins through that behavior, and that Kaiser hired Fischer to serve as his agent, and consequently, Fischer's knowledge can be imputed to Kaiser.   In turn, Kaiser argues that the claims of interference with security should be dismissed, because the allegations against him are conclusory, and do not state any specific actions taken, or statements made by him.

In Minnesota, a claim for wrongful interference with a contractual relation requires "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of the breach; (4) without justification; and (5) damages." Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994), quoting Furlev Sales & Associates, Inc. v. North American Automotive Warehouse, Inc., 325 N.W.2d 20, 25 (Minn. 1982); see also, Kallok v. Medtronic, Inc., 573 N.W.2d 356, 362 (Minn. 1998).   In their First Amended Complaint, the Murrins allege that they had a contract

with Avidigm, but they have failed to allege any facts that would establish that Kaiser was aware of that contract, and intentionally took actions that he knew would interfere with the Murrins' contractual relations.

Interpreted in the light most favorable to the Murrins, the facts contained in the Amended Complaint allow an inference that Kaiser took certain actions, that ultimately allowed third parties to secure an interest in properties, that the Murrins felt should have been offered to them as security for their investment with Avidigm.  However, aside from the conclusory statement that Kaiser "knew or should have known" that those actions would negatively impact upon the Murrins, they have not pled facts that would establish that Kaiser did anything more than act in his own economic interest. See, Harman v. Heartland Food Co., 614 N.W.2d 236, 242 (Minn. App. 2000)("[W]hen a defendant has a legitimate economic interest to protect, a plaintiff must show that the breach of plaintiff's contract with the third party resulted at least in part from the defendant's commission of an independent tort or other illegality.").

As to the action for the tortious interference with prospective business relations, such an action will lie "when one intentionally and improperly interferes with another's prospective business relation by (1) inducing a third person not to enter into or continue the prospective relation, or (2) preventing the other from continuing a

- 54 -

prospective business relationship." Hough Transit, Ltd. v. National Farmers Organization, 472 N.W.2d 358, 361 (Minn. App. 1991), citing United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632-33 (Minn. 1982); see also, R.A., Inc. v. Anheuser-Busch, Inc., 556 N.W.2d 567, 570-71 (Minn. App. 1996). As with the Murrins' claims regarding an interference with contract, aside from a boilerplate recitation of the standard, the Murrins have failed to plead any facts that would establish that Kaiser was aware of the Murrins' relationship with Avidigm, or that Kaiser deliberately attempted to interfere with that relationship.

Additionally, the Murrins claim that Kaiser breached a fiduciary duty to the Murrins, see, Amended Complaint, supra at ¶250, but we fail to see any basis, on the facts alleged in the First Amended Complaint, to conclude that Kaiser had any relationship to the Murrins, let alone that he owed them any special duty. According to the Murrins, Fischer was the agent of Kaiser's employer, and through the relationship between Fischer and that employer, we should impute Fischer's knowledge, and actions, to Kaiser as Fischer's principal. While an employer can be held liable for the intentional torts of an employee, when the employee used apparent authority, or when the employee was "aided in accomplishing the tort by the existence of the agency relation," Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 759 (1998),

here, the Murrins have only alleged that Kaiser's employer was Fischer's principal, and from that assertion, they ask us to find that Kaiser stood in the shoes of Fischer's employer. We are not able to make such a stretch on the minimal facts presented, and know of no legal theory that would allow us to find the agent of an employer to be vicariously liable for the intentional acts of another agent of the same employer.

        2)    <u>Conspiracy</u>. The Murrins further allege that Kaiser was a participant in a conspiracy to commit fraud, assertedly because he persuaded Avidigm to make unprofitable investments, and that Kaiser acted in concert with the other Defendants, and with Fischer. However, as we have detailed, in order to plead a claim for civil conspiracy, a plaintiff must allege specific facts that show that there was a "meeting of minds" among the alleged conspirators. See, <u>Smithson v. Aldrich</u>, supra at 1063.

In the Amended Complaint, the Murrins simply allege that Kaiser "entered into [a] conspiracy by hiring Fischer as [his] agent," see, <u>Amended Complaint</u>, supra at ¶388, that Kaiser acted in concert with Fischer and other named Defendants, <u>id.</u> at ¶391, and entered into a "mini-conspiracy" with those parties. <u>Id.</u> at ¶522. On those assertions, we are unable to find that the Murrins have pled that Kaiser perpetrated an underlying fraud, and then engaged in a meeting of minds with Fischer, or the other

- 56 -

Defendants.  As the Murrins have failed to allege any specific fraudulent acts, that were

undertaken by Kaiser, we find that his Motion to Dismiss should be granted.

B.    The Murrins' Motion to Amend Complaint.

1.    Standard of Review.  Rule 15(a), Federal Rules of Civil Procedure,

provides, in pertinent part, as follows:

> [A] party may amend the party's pleading only by leave of
> court or by written consent of the adverse party; and leave
> shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a
> plaintiff may be a proper subject of relief, he ought to be
> afforded an opportunity to test his claim on the merits.  In
> the absence of any apparent or declared reasons -- such as
> undue delay, bad faith or dilatory motive on the part of the
> movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment,
> futility of amendment, etc. -- the leave should, as the rules
> require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also, Thompson-El v. Jones, 876 F.2d
66, 67 (8th Cir. 1989).

Thus, while leave should be freely given, leave should not be afforded when the

proposed amendments are futile.  See, DeRoche v. All American Bottling Corp., 38

F. Supp.2d 1102, 1106 (D. Minn. 1998)("Although we begin with a presumption of

liberality, an amendment to a pleading can be successfully challenged on grounds of futility if the claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted."), citing Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d 1078, 1082 (8th Cir. 1993); Weimer v. Amen, 870 F.2d 1400, 1407 (8th Cir. 1989); see also, United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001)("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim."), cert. denied, 536 U.S. 925 (2002).  "'Accordingly, futility must be assessed in the same manner as a 12(b)(6) motion.'"  Berczyk v. Emerson Tool Co., 291 F. Supp.2d 1004, 1018-19 (D. Minn. 2003), quoting Lumsden v. Ramsey County Community Corrections Dep't, 2002 WL 31886630 at *1 (D. Minn., December 23, 2002).

       2.   Legal Analysis.  The Murrins seek to amend their First Amended Complaint, and argue that the allowance of such an Amendment will insure that they have pled their claims, such as fraud, with specificity, and have addressed those deficiencies that have been highlighted in the Defendants' various dispositive Motions. The Murrins specifically seek to name Mattson, and Kaiser, in the RICO claims, and to change the caption of the Complaint so as to remove Danisa Leflore, and substitute,

as party-Defendants, Damon Leflore, who is the husband of Leflore, and Stephanie Leflore.[8]

In opposition to the Murrins' Motion to Amend, the Defendants first argue that the Murrins have unduly delayed their Motion, having had notice of the inadequacies of the First Amended Complaint since May of 2007.[9]   However, delay alone is not a reason to deny a Motion to Amend, unless that delay gave rise to prejudice against the opposing parties.  See, Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004); Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 664 F.2d 690, 694 (8th Cir. 1981).  In this case, as noted by the Murrins, no Rule 26(f) meeting has occurred, no Scheduling Order has been issued, and no discovery has been exchanged.  See, Plaintiffs' Memorandum in Support, Docket No. 174, at p. 2.   Although we understand that all of the parties have been somewhat inconvenienced by having to review the Murrins' proposed Second Amended Complaint, which is even longer than

---

[8]Although the Murrins originally sought to amend the Complaint in order to add separate RICO, breach of contract, and actual and vicarious liability claims against Senn, see, Proposed Amended Complaint, Docket No. 174, Exhibits 1-2, at ¶¶ 601-50; 378-87; 702-09, since Senn has been dismissed with prejudice, we recommend that the Murrins' Motion, in that respect, be denied, as moot.

[9]The Fischer Defendants, Jeffery, and Kaiser, have each filed a Memorandum in opposition to the Murrins' Motion to Amend their Complaint.  See, Docket Nos. 203, 215, 218.

the First Amended Complaint, we are unable to find prejudice to any party on that basis alone.

Moreover, even though we have recommended that several of the Defendants' Motions to Dismiss the First Amended Complaint, or Motions for Judgment on the Pleadings, be granted, we note that our Court of Appeals has held that it is procedural error to grant a pending Motion to Dismiss, and subsequently dismiss a Motion to Amend the Complaint as moot, recommending, instead, that Courts should apply the Rule 15 discretionary standard, and weigh the merits of each Motion to Amend. See, Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002). Accordingly, we turn to the merits of the Murrins' Motion to Amend, which the Defendants oppose as futile, essentially for the same reasons that supported their previous Dispositive Motions.

First, the Murrins seek to amend the caption of the Complaint, in order to remove the name Danisa Leflore, and add Damon Leflore and Stephanie Leflore. However, since we have found that Leflore's Motion to Dismiss should be granted, we recommend that the Murrin's Motion, as to Leflore, be denied, as moot. Similarly, we find no basis, in the proposed Second Amended Complaint, to join Damone Leflore as a party Defendant, which we have not found to be insufficient as to his wife,

Leflore.   Even the Murrins concede that Leflore had "more knowledge of the situation."   Docket No. 174, Murrins' Memorandum, at p. 3.

In addition, the Murrins seek to amend their pleadings, so as to specifically allege violations of RICO by Mattson and Kaiser.   Id. at ¶602.   However, as we have previously addressed, the heightened pleading requirements of Rule 9(b), Federal Rules of Civil Procedure, apply to allegations of fraud in a civil RICO Complaint, see, Abels v. Farmers Commodities Corp., supra at 920, and although the Murrins have added the names of particular Defendants to the section of their proposed Second Amended Complaint that addresses their RICO claims, they have not added any facts, that would allow us to find, that they have pled fraud with particularity, as to Mattson or Kaiser.

Specifically, while the Murrins include a laundry list of real estate transactions that they imply were fraudulent, see, Docket No. 174, Exhibits 1-2, Proposed Second Amended Complaint, supra at ¶619, and also allege several "predicate acts," id. at ¶¶639-40, they have not alleged when those transactions occurred, or even which of the Defendants were supposed to have been participants.   Thus, we find that the Murrins' attempt to amend their allegations, as to violations of civil RICO, so as to include Mattson and Kaiser, would be futile, and should be denied.

- 61 -

In sum, while our Court of Appeals has noted that it is an abuse of discretion for a District Court to deny amendments based on facts similar to those contained in the original Complaint, see, Popp Telcom v. Am. Sharecom, Inc., 210 F.3d 928, 943 (8th Cir. 2000)(citing cases), a District Court does not abuse its discretion when the proposed amendment has the potential to "result in the burdens of additional discovery and delay to the proceedings." McAnnich v. Wintermute, 491 F.3d 759, 766-67 (8th Cir. 2007), quoting Popp Telcom v. Am. Sharecom, Inc., supra at 943. Moreover, as was the case with their First Amended Complaint, the Murrins' proposed Second Amended Complaint is a paragon of prolixity, and is both convoluted and confusing. The Murrins are reminded, and not for the first time, that "Fed.R.Civ.P. 8 provides in subdivisions (a) and (e) that a complaint shall contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,' and shall be 'simple, concise and direct.'" Mangan v. Weinberger, 848 F.2d 909, 911 (8th Cir. 1988), cert. denied, 488 U.S. 1013 (1989).

While nearly impossible to fathom, given its mixture of advocacy wrapped in suspicion and conjecture, we conclude that, with the exception of those claims which we have addressed herein, and have recommended to be dismissed, the First Amended Complaint placed the Defendants on notice of the claims against them, and we fail to

perceive how a further, and more extenuated confabulation of their claims, can serve

any basis.  Accordingly, we find that the supposed "particularization" of their claims

is wholly unnecessary, and we deny the Murrins' request for leave in that respect.

See, Wiles v. Capitol Indemnity Corp., 280 F.3d 868, 871 (8th Cir. 2002) ("The district

court did not abuse its discretion in denying Wiles leave to amend his complaint

because the proposed amendment merely restated Wiles's prior conspiracy claim and

would fail as a matter of law for the same reasons as the original complaint.").

Simply put, the proposed Second Amended Complaint does not advance the

requisites of notice pleading, and merely expands what was already an unreasonably

verbose, and conclusory recitation of what the Murrins hope will be their case in chief

into a longer, and with only marginally-advanced organization of their claims.[10]  As

---

[10]The proposed Second Amended Complaint is prefaced with a Table of Contents,
but any attempt to correlate the allegations of that pleading, with its predecessor, is
fraught with extreme difficulty.  To impose such a horrendous burden upon the
opposing parties, and the Court, in persevering through an endless, repetitious, and
confounding collage of allegations, does not serve any legitimate purpose.  Rather than
to inform, and to provide notice, the Murrins' pleadings simply deluge the Court, and
opposing counsel, with the herculean task of divining what it is that the Murrins are
truly asserting.  We have expended inordinate effort in parsing their pleadings,
proposed pleadings, and the attendant briefs before us, and we are confident that,
apart from some notion that the Court will tire, and simply allow the Murrins' claims
to proceed to a later date, the Murrins could have presented the short and plain
statement of their claims, as augmented by specific allegations of fraud, as would
(continued...)

noted in <u>In re Buffets, Inc. Securities Litigation</u>, 906 F. Supp. 1293, 1299 (D. Minn. 1995), "[the] Plaintiffs engage in lengthy narrative that serves to conceal rather than reveal." <u>Id.</u> (finding that 98-page Complaint failed to comply with Rule 8 and 9(b), warranting dismissal).   We find that the proposed Second Amended Complaint, in its current state, "is an unwelcome and wholly unnecessary strain on defendants and on the court system." <u>Id.</u>, at 1298, quoting <u>In re GlenFed, Inc</u>., 42 F. 3d 1541, 1553-54 (9th Cir. 1994).   Accordingly, we recommend that the Murrins' Motion to Amend the Complaint be denied.

C. <u>Punitive Damages</u>.   The Murrins have also moved to amend their First Amended Complaint in order to plead a claim for punitive damages.   See, <u>Murrins' Memorandum in Support</u>, <u>Docket No. 174</u>, at p. 2.

1. <u>Standard of Review</u>. We have addressed the standards, which are applicable to Motions to Amend a pleading so as to allege a claim for punitive damages under Minnesota law, in <u>Berczyk v. Emerson Tool, Co.</u>, 291 F. Supp. 2d 1004, 1008-09 (D. Minn. 2003), where, in an alleged product defect case, we explained as follows:

---

[10](...continued)
assist the Court, and counsel, in moving this case on to a just, speedy and inexpensive resolution.

"'[I]n the Federal Courts of this District, the pleading of punitive damage claims, under causes of actions premised upon the law of the State of Minnesota, must generally conform to the requirements of Minnesota Statutes Sections 549.191 and 549.20.'" Olson v. Snap Products, Inc., 29 F. Supp.2d 1027, 1034 (D. Minn. 1998), quoting Ulrich v. City of Crosby, 848 F. Supp. 861, 866 (D. Minn. 1994); see also, Bunker v. Meshbesher, 147 F.3d 691, 696 (8th Cir. 1998).   Under Section 549.191, a plaintiff who seeks to assert a punitive damage claim must first obtain leave of the Court to do so, based upon a prima facie showing of entitlement.  See, Ulrich v. City of Crosby, supra at 867.  A plaintiff need not demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages.[11]   See, Olson v. Snap Products, Inc., supra at 1034.   As the Statute provides, a Court "shall grant a Motion to amend to allege punitive damages if it finds prima facie evidence in support of the motion."   Bunker v. Meshbesher, supra at 696 [quotations omitted].

In order to establish a claim for punitive damages, a party must show, by clear and convincing evidence, that the Defendant acted with a "deliberate disregard for the rights or safety of others."  Minnesota Statutes Section 549.20, Subdivision 1(a).  The pivotal phrase "deliberate disregard" has been statutorily defined as follows:

---

[11]Under the strictures of Section 549.191, "the Court reviews the evidence in support of a Motion to Amend as the Court would review a Motion for a Directed Verdict * * *." Ulrich v. City of Crosby, 848 F. Supp. 861, 867 (D. Minn. 1994); see also, Swanlund v. Shimano Indus., Corp., Ltd., 459 N.W.2d 151, 154 (Minn.App. 1990).  Thus, as we have observed in prior cases, in reaching such a determination, the Court makes no credibility rulings, and does not consider any challenge, by cross-examination or otherwise, to the Murrins' proof.  Id.

(b)    A defendant has acted with deliberate disregard for the rights or safety of others if the Defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:

    (1)    deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or

    (2)    deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minnesota Statutes Section 549.20, Subdivision 1(b).

In substance, "[a] defendant operates with 'deliberate disregard' by acting with intent or indifference to threaten the rights or safety of others."  Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1256 (8th Cir. 1994).  As such, "[a] mere showing of negligence is not sufficient" to sustain a claim of punitive damages.  Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan, 494 N.W.2d 261, 268 (Minn. 1992).

In addition, under the Section 549.20 standard, the Court "is required to search for evidence which is 'clear and convincing.'"  Olson v. Snap Products, Inc., supra at 1036.  "To be 'clear and convincing,' there must be 'more than a preponderance of the evidence but less than proof beyond a reasonable doubt.'"  Ulrich v. City of Crosby, supra at 868, quoting Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978).  Ultimately, the Court's independent search for clear and convincing, prima facie evidence, that the defendant acted with a deliberate disregard for the rights or safety of others, requires the Court to do more than "rubber

stamp" the allegations in the Motion papers.  Id.; Swanlund
v. Shimano Indus. Corp., Ltd., 459 N.W.2d 151, 154
(Minn. App. 1990).

Since Berczyk, the substantive law of Minnesota has not changed, and we apply that

same standard here.

      2.   Legal Analysis.  As our Court of Appeals has recognized, the

statutory procedures of Sections 549.191, and 549.20, were "enacted to prevent

frivolous punitive damages claims by allowing a court to determine first if punitive

damages are appropriate."  Gamma-10 Plastics, Inc. v. American President Lines,

Ltd., supra at 1255, citing Bougie v. Sibley Manor, Inc., 504 N.W.2d 493, 499 (Minn.

App. 1993); see also, Ulrich v. City of Crosby, supra at 866-67("As recognized by

our Court, the Minnesota Legislature adopted, in 1986, the pleading requirements of

Section 549.191 in order to deter certain practices in the presentment of punitive

damage claims which were thought to be abusive, and in order to address a perceived

insurance crisis."), citing Gobuty v. Kavanaugh, 795 F. Supp. 281, 287 (D. Minn.

1992), Kuehn v. Shelcore, Inc., 686 F. Supp. 233, 234 (D. Minn. 1988), and Filz v.

Mayo Foundation, 136 F.R.D. 165, 174 (D. Minn. 1991).

      As a result, "[a] plaintiff must file a motion seeking punitive damages and **must**

**include** the applicable legal basis and **one or more affidavits** setting forth the factual

- 67 -

grounds supporting issuance of punitive damages."  Williamson v. Prasciunas, 661

N.W.2d 645, 653 (Minn.App. 2003)[emphasis added], citing Minnesota Statutes

Section 549.191.[12]  "The trial court may not allow an amendment where the motion

and supporting affidavits 'do not reasonably allow a conclusion that clear and

convincing evidence will establish the defendant acted with willful indifference * * *.'"

Swanlund v. Shimano Indus. Corp., Ltd., supra at 154, quoting McKenzie v. Northern

States Power Co., 440 N.W.2d 183, 184 (Minn. App. 1989); see also, Gamma-10

Plastics, Inc. v. American President Lines, Ltd., supra at 1255.

---

[12]In pertinent part, Section 549.191 provides as follows:

> Upon commencement of a civil action, the complaint must
> not seek punitive damages.  After filing the suit a party may
> make a motion to amend the pleadings to claim punitive
> damages.  The motion must allege the applicable legal basis
> under Section 549.20 or other law for awarding punitive
> damages in the action and **must be accompanied by one
> or more affidavits** showing the factual basis for the claim.
> At the hearing on the motion, if the court finds prima facie
> evidence in support of the motion, the court shall grant the
> moving party permission to amend the pleadings to claim
> punitive damages. * * *

[Emphasis supplied].

Given the language of Section 549.191, and its legislative purpose, we construe the term "must"[13] to impose a mandatory obligation, on a party moving to plead

---

[13]As the Minnesota Supreme Court observed, in <u>State v. Jones</u>, 234 Minn. 438, 440-41, 48 N.W.2d 662, 663-64 (Minn. 1951), citing <u>Cashman v. Hedberg</u>, 215 Minn. 463, 472, 10 N.W.2d 388, 339 (Minn. 1943):

> The word 'may' may be construed to mean 'shall' or 'must,' but only when the interests of the public or their persons require it.  The use of the words 'may' and 'shall' is not decisive of whether a statutory provision is directory or mandatory.  The word 'must' does not necessitate a mandatory construction.  6 Dunnell, Dig. & Supp. §8979, and cases cited.  The words 'may' and 'must' are used interchangeably.  To determine the import thereof, consideration should be given to the subject matter, the language of the statute, the importance of the provisions, the object intended to be achieved, and the legislative intent.

Cf., <u>Triax Midwest Associates, L.P. v. City of Nashwauk</u>, 1998 WL 865736 at *2 (Minn.App., December 15, 1998)("Although Minn.Stat. §238.081 uses 'shall' and 'must,' those words are not necessarily conclusive as to whether the statute is mandatory or directory," and "a factor that weighs heavily in favor of construing a statute as directory is the failure of the statute to declare the consequences of noncompliance."), citing <u>State v. Jones</u>, supra; <u>In re Application of Crown CoCo, Inc.</u>, 458 N.W.2d 132, 138 (Minn.App. 1990).

As to Section 549.191, it would make no sense to require a party to seek leave to amend so as to plead punitive damages, if all that were required of the party would be the conclusory allegations which the Section was enacted to cure.  Moreover, as we note in the text, Section 549.191 has been construed by both Federal and State Courts as precluding a Court from allowing "such a motion where the motion and supporting affidavits do not reasonably allow a conclusion that clear and convincing evidence will establish the defendant acted with willful indifference * * *." <u>Gamma-10</u>

(continued...)

punitive damages, to accompany that Motion with one or more Affidavits.   See,

Berczyk v. Emerson Tool, Co., supra at 1009; see also, OnePoint Solutions, LLC v.

Borchert, 486 F.3d  342, 348 (8th Cir. 2007)("Notably, the motion [to amend to allege

punitive damages] must allege the legal basis for awarding punitive damages and must

be accompanied by one or more affidavits showing the factual basis for the punitive

damages."), citing Minnesota Statutes Section 549.191, and Williamson v. Prasciunas,

supra at 653.

As a threshold matter, we note that when the Murrins filed their Motion to

Amend Complaint on September 20, 2007, see, Docket No. 172, but they failed to file

an Affidavit in support of that Motion.   Moreover, while the Murrins filed a number of

Exhibits in support of their Motion to Amend Complaint, see, Docket Nos. 175-77,

those documents were not authenticated in any way, as by being included as part of

an Affidavit.   Although generally, we would consider the failure to submit an Affidavit

---

[13](...continued)
Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1255 (8th Cir. 1994),
citing Swanlund v. Shimano Indus. Corp., Inc., supra at 154.  As a result, the Section
plainly reflects the negative consequence of noncompliance -- namely, that the Motion
to Amend the pleading, so as to state a punitive damage claim, will not be allowed.
Cf., Harmon v. Mattson, 1999 WL 1057236 at *7 (Minn. App., November 23,
1999)(reversing the Trial Court's decision to grant punitive damages because the
plaintiffs "failed to submit supporting affidavits when they moved to add punitive
damages to their claim * * *."), rev. denied (Minn., January 18, 2000).

to be fatal to a Motion to Amend, so as to plead punitive damages, on September 27, 2007, the Plaintiff DeVonna Murrin filed a Motion for Joinder in Motion to Amend Complaint, see, Docket No. 214, and attached to that Motion a Declaration of Murrin. See, Docket No. 214-2.  Thus, we consider that Declaration as the factual support for the Murrins' Motion for punitive damages.

In his Declaration, Murrin states that he and his wife were initially contacted, concerning an investment with Avidigm, in May of 2004, and that they attended a meeting in August of 2004, at which they agreed to invest $600,000.00 in return for a security worth $900,000.00.  Id. at ¶4.  At that meeting, the Murrins stipulated that their investment with Avidigm would be used only as working capital, and not for salaries, or for land development.  Id. at ¶24.  The Murrins were told that Avidigm owned a property in North Dakota that would serve as sufficient security for their investment, id. at ¶16, and Murrin attests that he reviewed the County Recorder records, which related to the North Dakota property, and found that the appraisal value, at the time that the Murrins made their investment with Avidigm, was not sufficient to have served as their security.  Id. at ¶27.

As attested by Murrin, he and his wife agreed to allow Fischer to perfect the security on their investment, id. at ¶9, and in December of 2004, they were sent a copy

of an audit of Avidigm's business records, which stated that it was a solvent business. Id. at ¶14.  Murrin states that, in October of 2004, Fischer had reassured the Murrins that their investment was secure, id. at ¶¶28-29, and when the Murrins contacted him in 2006, Fischer stated that he would file a mortgage for them, which enlarged their claim on the North Dakota property, which he did.  Id. at ¶30.

From their Motion and supporting Memorandum, it is not obvious which of the Defendants the Murrins feel should be named in their claim for punitive damages, and indeed, the Murrins acknowledge that "[i]t is hard to separate [the Defendants] out." Murrins' Memorandum in Support, Docket No. 174, at p. 30.  However, the Murrins also suggest that the Court should not deny their Motion to add a claim for punitive damages at this time, when "evidence will be presented, under Court supervision, which will be monitored as the trial proceeds so there is another time and place to determine whether or not punitive damages will ever be awarded." Id. at p. 31.  By so stating, the Murrins appear to misunderstand the standard, which the Courts employ in determining the allowance of an amendment to seek punitive damages.  In reviewing such a Motion, we are not obligated to sift through his pleadings, searching for evidence that would support their allegations, nor are we willing -- or able -- to defer a decision on the Motion to Amend until the parties have completed their initial

discovery.  See, e.g., <u>Judge v. Susee</u>, 2006 WL 463534 at *7 (D. Minn., February 24, 2006)("The Court need not sift through the record to locate evidence to support Plaintiff's argument."), quoting <u>Nw. Nat'l Ins. Co. v. Baltes</u>, 15 F.3d 660, 662-63 (7th Cir. 1994)("District judges are not archaeologists."), <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th cir. 1991)("Judges are not like pigs, hunting for truffles buried in briefs."), <u>Nicholas Acoustics & Specialty Co. v. H & M Constr. Co., Inc.</u>, 695 F.2d 839, 846-47 (5th Cir. 1983)("Judges are not ferrets!").  Rather, we take such a Motion under advisement, based on the attestations that are submitted in its support.

We have summarized those facts, to which Murrin averred in his Declaration in support of the Murrins' Motion, and we find that the only Defendant, against whom the Murrins have alleged any facts supportive of a punitive claim, is Fischer. Therefore, we must determine if the Murrins have shown, by clear and convincing evidence, that Fischer acted with deliberate disregard to the high probability that the Murrins' financial well-being would be harmed by his actions.   On the Record presented, we find that the Murrins have met their burden of providing evidence that would allow a Jury to find that Fischer acted in a way that was more than merely negligent, in encouraging the Murrins to make an investment, and in perfecting the Security on that investment.

Even if the Murrins are basing their claim on Fischer's failure to advise them as to the inadequacy of the North Dakota property to provide them with the agreed-upon security, under Minnesota law, omissions can constitute actionable fraud.   See, Commercial Property Investments, Inc. v. Quality Inns International, Inc., 938 F.2d 870, 878 (8th Cir. 1991)(awarding punitive damages for fraud), citing Sweeden v. Sweeden, supra at 877 (Minn. 1965)("It is settled law, however, that a statement in a business transaction, which, while stating the truth as far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation."); see also, Sullivan v. Ouimet, 377 N.W.2d 24, 27 (Minn. App. 1985).   On this basis, we find that the Murrins should be allowed to amend their First Amended Complaint, in order to add a claim for punitive damages as to Fischer.[14]

---

[14]Moreover, we note that we have recommended that the Murrins be allowed to proceed on their claim that Fischer committed civil theft pursuant to Minnesota Statutes Section 604.14, Subdivision 1.  In OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 348 (8th Cir. 2007), the Court noted that, while generally, under Minnesota law, a Trial Court may not allow an amendment for punitive damages without first requiring the plaintiff to comply with Minnesota Statutes Section 549.191, "Minnesota case law, however, holds that it is not necessary for a plaintiff to receive permission from the trial court to amend its complaint to seek damages when the remedy is sought under §604.14."  See also, Williamson v. Prascinus, 661 N.W.2d 645, 653-54 (Minn.App. 2003).  Therefore, a claim under Section 604.14 automatically allows for

(continued...)

D.     The Fischer Defendants' Motion for Sanctions Pursuant to Title 28

U.S.C. §1927.   The Murrins first filed their Motion for an Attachment of Fischer's

nonexempt assets on September 20, 2007.  See, Docket No. 187.  Seven days later,

on September 27, 2007, Fischer filed his Memorandum of Law in opposition to the

Motion and, on that same date, the Plaintiffs informally withdrew the Motion from the

Hearing, which was then scheduled to be conducted on October 4, 2007.    See,

Docket Nos. 203, and 214.   Given those events, Fischer requests an award of fees

against counsel for the Plaintiffs, under Title 28 U.S.C. §1927, arguing that the Motion

for Attachment was so poorly considered by Plaintiffs' counsel, that its prompt

withdrawal implies that the Motion was filed in bad faith.[15]

---

[14](...continued)
punitive damages of one hundred percent (100%) of the value of the stolen property,
id. at 349, and so even if we were to deny the Murrins' Motion to add a punitive
damages to the Amended Complaint, they would be able to bring a claim for punitive
damages, against Fischer, as to the theft claims.

[15]Fischer did not renew his Motion for Sanctions following the Plaintiffs' refiling
of their Motion to Attach Fischer's assets -- a Motion that we recommended be
denied,  by Report and Recommendation dated January 4, 2008.  See, Docket No.
295.  As a result, the only question presented is whether Fischer is entitled to sanctions
owing to the original filing of the Murrins' Motion for Attachment.

- 75 -

1.    <u>Standard of Review</u>.   Albeit expressed in the context of an

employment discrimination action, our Court of Appeals most recently summarized

sanctions, under Section 1927, as follows:

> A district court may award attorneys' fees to a prevailing
> defendant in a Title VII action upon finding that the action
> was "frivolous, unreasonable, or without foundation, even
> though not brought in subjective bad faith," Christiansburg
> Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694,
> 54 L.Ed.2d 648 (1978), and may order reimbursement of
> fees pursuant to 28 U.S.C. §1927 when an attorney's
> conduct multiplies the proceedings unreasonably and
> vexatiously, and, when "viewed objectively, manifests either
> intentional or reckless disregard of the attorney's duties to
> the court."

<u>EEOC v. Trans States Airlines, Inc.</u>, 462 F.3d 987, 996 (8th Cir. 2006), citing <u>Tenkku</u>
<u>v. Normandy Bank</u>, 348 F.3d 737, 743 (8th Cir. 2003); see also, <u>Buchanan v. United</u>
<u>Parcel Serv., Inc.</u>, 460 F.3d 1004, 1010 (8th Cir. 2006), cert. denied, --- U.S. ---, 127
S.Ct. 2043 (2007).

As a consequence, "[a] court may require counsel to satisfy personally attorneys' fees

reasonably incurred by an opposing party when counsel's conduct 'multiplies the

proceedings in any case unreasonably and vexatiously." <u>Buchanan v. United Parcel</u>

<u>Serv., Inc.</u>, supra at 1011, quoting <u>Title 28 U.S.C. §1927</u>.

When confronted with the argument, that the applicable standard requires both

objective and subjective components, our Court of Appeals rejected the argument as

follows:

- 76 -

> Our subsequent holdings make clear, however, that the
> statute permits sanctions when an attorney's conduct,
> "viewed objectively, manifests either intentional or reckless
> disregard of the attorney's duties to the court."  Tenkku,
> 348 F.3d at 743 (quoting Perkins [v. Spivey,] 911 F.2d
> [22], at 36 [(8th Cir. 1990)]; see also, Lee v. First Lenders
> Ins. Servs., Inc. 236 F.3d 443, 445 (8th Cir. 2001).

Buchanan v. United Parcel Service, Inc., supra at 1011.

"The imposition of sanctions is a serious matter and should be approached with

circumspection."  Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999), quoting

O'Connell v. Champion Int'l Corp., 812 F.2d 383, 395 (8th Cir. 1999).   "Because

section 1927 is penal in nature, it should be strictly construed so that it does not

'dampen the legitimate zeal of an attorney in representing his client.'"   Id., citing

Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1416 (5th Cir.

1994); and H.R. Conf. Rep. No. 96-1234, at p. 8 (1980), reprinted in 1980

U.S.C.C.A.N. 2716, 2781-82.

Title 28 U.S.C. §1927 provides in relevant part as follows:

> Any attorney or other person admitted to conduct cases in
> any court of the United States * * * who so multiplies the
> proceedings in any case unreasonably and vexatiously may
> be required by the court to satisfy personally the excess
> costs, expenses, and attorneys' fees reasonably incurred
> because of such conduct.

Title 28 U.S.C. §1927.

Sanctions are warranted under Section 1927 "when attorney conduct, viewed objectively, manifests either intentional or reckless disregard for the attorney's duties to the court."  Lee v. First Lenders Ins. Services, 236 F.3d 443, 445 (8th Cir. 2001); see also, Tenkku v. Normandy Bank, 348 F.3d 737, 743 (8th Cir. 2003), citing Perkins v. Spivey, 911 F.2d 22, 36 (8th Cir. 1990).  Section 1927 sanctions are discretionary, see, Clark v. United Parcel Service, Inc., 460 F.3d 1004, 1011 (8th Cir. 2006), and the Section should be strictly construed so as not to "dampen the legitimate zeal of  an attorney in representing his client."  Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999), quoting Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1416 (5th Cir. 1994).

   2. Legal Analysis.  Although there is a Circuit split on the issue of whether Section 1927 applies to pro se litigants, and our Court of Appeals has not ruled on the issue, at least one Court in this Circuit has held that the inherent power of the Court to impose sanctions permits its applicability to litigants not represented by counsel.  See, Wallace v. Kelley, 2007 WL 2248105 at *3 (D. Neb., August 1, 2007).  In this case, although Murrin is appearing pro se, he is also a licensed attorney who has been admitted to practice before this Court, and has also noticed an appearance, as an attorney in this matter, on behalf of the Murrins.  See, Docket No. 5.

Nonetheless, we cannot find that sanctions, against Murrin and the Murrins' counsel, is appropriate at this time.   Although the Fischer Defendants were undoubtedly inconvenienced by having the Murrins' Motions withdrawn on the day that the Fischer Defendants filed their Memorandum in Opposition, which pointed out procedural deficiencies in those Motions, we are persuaded that the procedural deficiencies, which prompted the Murrins to withdraw the Motion, were driven by their neglect in carefully reviewing Minnesota's Attachment Statute.   Having been alerted to those deficiencies by the Fischer Defendants' responsive papers, the Murrins were obligated to withdraw their Motions.   If the Fischer Defendants' argument were correct, then any error by an attorney would qualify for sanctions, under Section 1927, and that was plainly not the intention of Congress in allowing such sanctions under proper circumstances.   See, Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999)("Because Section 1927 is penal in nature, it should be strictly construed so that it does not 'dampen the legitimate zeal of an attorney representing his client.'"), quoting Travelers Inc. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1416 (5th Cir. 1994).   Of course, we do not suggest that a repetition of such poorly framed Motions would not warrant sanctions, but that is not now the question presented.

- 79 -

Therefore, we recommend that the Motion of the Fischer Defendants for Sanctions pursuant to Section 1927 be denied.

Lastly, as a concluding observation, apart from allowing the Murrins to amend their First Amended Complaint so as to add a punitive damage claim, we recommend that they not be allowed to amend their Counts, as to which we have recommended the grant of dismissal as a matter of law, absent some effective means of controlling the sheer magnitude of any future amended pleading.  As we have related, the First Amended Complaint is 153 pages long, and contains 626 paragraphs.  Following by several months, the Defendants' Motions to Dismiss, and the arguments on those Motions, the Murrins moved to amend their First Amended Complaint.  Appended to that Motion was a proposed Second Amended Complaint that contained 187 pages, and included 745 paragraphs.  Having been alerted to the claimed deficiencies in their First Amended Complaint,[16] and then having so poorly drafted a proposed Second

---

[16]The Fischer Defendants' briefing of the RICO issue was limited and, as disclosed in our discussion of that issue, our independent review of the Murrins' Federal RICO claim disclosed significant deficiencies in pleading that had not been specifically identified by the Fischer Defendants.  Since the Murrins were not alerted to those fatal deficiencies, in advance of their proposed Second Amended Complaint, they should be allowed to replead that claim, **if they have a legitimate Rule 11 basis to do so**, but the proposed amendments should be subject to some effective constraint, both in the volume of allegations, and in particularity as to the specific Defendant who is

(continued...)

Amended Complaint, we conclude that, if allowance were made for a further amendment to their Complaint, then their past resort to unbridled prolixity would only promise a thoroughly inscrutable pleading. Simply put, the Murrins' repeated pleading abuses warrant an invocation of the "enough is enough" doctrine.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Motions of Jason E. Fischer, Fischer, Fischer & Jeffery, LLC, Fischer, Fischer & Jeffery, LLP, Law Offices of Fischer & Fischer, Jennifer K. Fischer, Agassiz Ridge, LLC, Woods by Bluestem, LLC, Bluestem Development, LLC, Investors Real Estate Services, LLC, a/k/a INRE Title and A-1 Settlement, n/k/a Real Source Title to Dismiss [Docket Nos. 7 and 82] be granted, in part, as follows:

a.     That the Fischer Defendants' Motion to Dismiss malpractice claims as to Fischer based on a third party beneficiary theory be granted, and the Motion to Dismiss all other malpractice claims as to Fischer be denied;

_____

[16](...continued)
accused of any particular claimed wrongdoing, rather than allowing the Murrins' past resort to the generic reference to "Defendants," which deprives each individual Defendant of the salutary purposes of notice pleading.

b.      That the Fischer Defendants' Motion to Dismiss fraud claims as to Fischer be denied;

c.      That the Fischer Defendants' Motion to Dismiss RICO claims, as to all of the Defendants, be granted;

d.      That the Fischer Defendants' Motion to Dismiss consumer fraud claims, as to Fischer, be denied;

e.      That the Fischer Defendants' Motion to Dismiss theft of property claims pursuant to Minnesota Statutes Section 604.14, as to Fischer, be denied, and that the Motion to Dismiss theft of property claims pursuant to Minnesota Statutes Section 609.52, as to Fischer, be granted;

f.      That the Fischer Defendants' Motion to Dismiss all claims as to Jennifer K. Fischer be granted; and

g.      That the Fischer Defendants' Motion to Dismiss all claims as to Agassiz Ridge, LLC, Woods by Bluestem, LLC, Bluestem Development, LLC, Investors Real Estate Services, LLC, a/k/a INRE Title and A-1 Settlement, n/k/a Real Source Title, be denied.

2.      That the Motion of Danisa Leflore, and Monet Management, Ltd., to Dismiss [Docket No. 48] be granted.

3.     That the Motion of Greg Kaiser, and Hay River Capital, LLC, for Judgment on the Pleadings [Docket No. 58] be granted.

4.     That Layne Brent Jeffery's Motion to Dismiss [Docket No. 65] be granted.

5.     That the Motion of Charles Senn, and Country Square Apartments, LLC, to Dismiss [Docket No. 141] be denied, as moot.

6.     That the Motion of Layne Brent Jeffery for Joinder in the Fischer Defendants' Opposition to the Plaintiffs' Motion for Default Judgment [Docket No. 152] be denied, as moot.

7.     That the Murrins' Motion to Amend/Correct the First Amended Complaint [Docket No. 172] be granted, in part, and DeVonna K. Murrin's Motion for Joinder in Motion to Amend Complaint [Docket No. 214] be denied, as moot.

8.     That the Motion of Jason E. Fischer, Fischer, Fischer & Jeffery, LLC, Fischer, Fischer & Jeffery, LLP, Law Offices of Fischer & Fischer, Jennifer K. Fischer, Agassiz Ridge, LLC, Woods by Bluestem, LLC, Bluestem Development, LLC, Investors Real Estate Services, LLC, a/k/a INRE Title and A-1 Settlement, n/k/a Real Source Title, for Sanctions [Docket No. 224] be denied.

9.    That the Murrins' Motion for Attachment and Injunction as to Charles Senn, and Country Square Apartments [Docket No. 239], be denied, as moot.

10.   That Charles Senn, and Country Square Apartment's, Motion for Sanctions [Docket No. 265] be denied, as moot.

Dated:  January 18, 2008          s/Raymond L. Erickson
                                  Raymond L. Erickson
                                  CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 4, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete

- 84 -

transcript of that Hearing **by no later than February 4, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.